## A03A2461. HOWARD v. THE STATE.
(596 SE2d 627)

MIKELL, Judge.

As a result of his confrontations with two separate victims in the Lake Crossing Apartments, a jury found Terrance M. Howard guilty of peeping Tom (Count 1 of Indictment 98-9-1731-28), aggravated

assault (Count 5 of Indictment 98-9-1903-28), false imprisonment (Count 6 of Indictment 98-9-1903-28), sexual battery (Count 9 of Indictment 98-9-1903-28), and three counts of burglary, including burglary with the intent to commit rape (Count 1 of Indictment 98-9-1903-28), burglary with the intent to commit robbery (Count 2 of Indictment 98-9-1903-28), and burglary with the intent to commit aggravated assault (Count 3 of Indictment 98-9-1903-28). The jury acquitted Howard of one count of burglary with the intent to commit a theft against the second victim, one count of peeping Tom against a third individual, and two counts of burglary against a fourth individual. Howard appeals from the denial of his motion for new trial. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows that the first victim, a female student at Clark Atlanta University, twice noticed a man at her window. The first time, at approximately 8:45 a.m. on November 13, 1997, the victim noticed a shadow on her window blinds. When she approached to investigate, she saw a man kneeling down and running away from the window. The victim went outside where she saw a black man, wearing a red and black flannel jacket and a cap, walking around the playground area. The second time, the victim noticed a shadow outside her window. When she approached to investigate, a black man was looking straight at her. When their eyes met the man turned and walked away. At trial, the victim identified a shirt-jacket police found in Howard's apartment as the red and black shirt she had seen on the man at the playground. At trial, the apartment manager testified that she spoke with Howard that same morning and remembered that he was wearing a red and black "shirt-coat."

At trial, Howard's ex-girlfriend testified that on November 17, 1997, she received a call at school from an individual asking if she had been with Howard at 6:00 a.m. She said no. Thirty minutes later, she received a page from Howard. When she called Howard to find out what was going on, he said, "well, they think that I was peeping in somebody's window, but I really wasn't. They always have me confused. Just tell them that I was with you."

The second victim, also a female student at Clark Atlanta University, was attacked on December 3, 1997. At trial, she identified Howard as the man who attacked her. At around 6:30 a.m., the second victim was awakened by flickering lights under her bedroom door and she immediately called 911. She then heard someone trying to open her locked bedroom door, and a loud noise, as Howard entered the room holding a big kitchen knife and a telephone cord. Howard forced the victim onto her stomach and tied her hands behind her back. He asked her if she had any money or jewelry. When the victim offered her credit cards and jewelry, Howard asked her when she last had sex.

Howard then held the knife to the victim's face and threatened to cut her or kill her if she screamed. Howard repeatedly told the victim to stop looking at him. When she refused, he jumped onto the bed, attempted to smother her with a pillow and hit the back of her head and neck.

Howard placed the blade of the knife under the victim's bra strap, lifted her jersey and licked her anus. Howard told the victim several times he was not going to penetrate her, but he then sat up and unbuckled his pants. Fearing for her life, the victim started screaming and kicking, and grabbed for the knife, severely cutting her hand on its blade. During the struggle, Howard punched the victim and stabbed her with the knife, cutting her ear and her leg. When the victim finally stood up, Howard slammed her back onto the bed, mounted her, and choked her until she defecated. Howard helped the victim up and said he was not going to kill her since she put up a good fight. The victim testified that Howard then left the bedroom, but returned moments later and told her that the police were outside and that he was going to kill her. When the victim screamed, Howard laughed and left. The victim again called 911 and then ran to her neighbor's apartment.

Officer Brett Rainey of the Cobb County Police Department responded to the 911 call. When he saw the victim, he described the scene as "very shocking." Officer Rainey called the paramedics and then questioned the victim. She provided a physical description of her attacker and told Officer Rainey that he was wearing a black winter hat, a black t-shirt, black sweat pants, white socks, and black athletic shoes. Two detectives arrived on the scene and told Officer Rainey about the peeping Tom incident. The suspect in that incident lived in apartment 1014. Officer Rainey and several detectives approached apartment 1014 and noticed blood on the doorknob. They knocked, but no one came to the door. Then, one of the window blinds opened. The officers knocked again and Howard opened the door and invited them in. The officers observed fresh injuries on Howard's hand. Detective Dawson obtained a warrant to search apartment 1014. During the search, he located in the washing machine a pair of wet black pants and a wet black t-shirt. Detective Dawson recovered a damaged knife from the kitchen. The detective observed blood and paper towel on the knife. In Howard's closet, Detective Dawson located a pair of white athletic shoes, covered with what he believed to be feces, as well as a red and black plaid shirt-jacket.

At trial, a forensic scientist from the Georgia Bureau of Investigation testified that the blood on the knife matched the DNA collected from both Howard and the second victim. The blood on the doorknob of Howard's apartment matched the DNA collected from Howard.

1. Howard contends that the evidence is insufficient to support his convictions for peeping Tom and burglary with the intent to commit robbery.

(a) Count 1 of the first indictment, which charges Howard with peeping Tom, alleges that Howard peeped through the first victim's window for the purpose of spying and invading her privacy. Howard argues that the evidence proves only that the victim saw a shadow of a figure passing her window; there is no evidence that Howard looked into the private area of the victim. We disagree.

OCGA § 16-11-61 provides that, "the term 'peeping Tom' means a person who peeps through windows or doors, or other like places, on or about the premises of another for the purpose of spying upon or invading the privacy of the persons spied upon and the doing of any other acts of a similar nature which invade the privacy of such persons." OCGA § 16-11-61 (b).

The evidence supports Howard's conviction. The first victim testified that when she went to investigate the shadow of a figure passing her window, she saw a man kneeling down and running away from the window. The second time the victim went to investigate a shadow on her window blinds, she came face to face with a black man. We conclude that there was sufficient evidence for the jury to find that Howard invaded the victim's privacy.

(b) Count 2 of the second indictment, which charges Howard with burglary, alleges that Howard entered the second victim's dwelling with the intent to commit a robbery. Howard argues that there was no evidence that he intended to commit a theft and that the jury recognized this by acquitting Howard of burglary with intent to commit a theft (Count 4 of Indictment 98-9-1903-28).

The record shows that the trial court merged the burglary with intent to commit robbery into the burglary with the intent to commit rape for the purpose of sentencing. Accordingly, the burglary with the intent to commit robbery conviction is vacated by operation of law, and Howard's contentions as to this conviction are moot. *Presley v. State*, 251 Ga. App. 823, 826-827 (3) (555 SE2d 156) (2001); *Black v. State*, 248 Ga. App. 626, 627 (2) (548 SE2d 9) (2001); *Miller v. State*, 223 Ga. App. 453, 454 (2) (477 SE2d 878) (1996).

2. Next, Howard assigns error to the trial court's admission of similar transaction evidence of the second peeping Tom incident involving the first victim, a peeping Tom incident at the same apartment complex involving a female resident named White, which was reported to the apartment manager, and a third peeping Tom incident reported to the apartment manager by a witness and resident of the apartment complex, Glenn Person. Howard argues that the state did not file a notice of intent to present the evidence and the trial court did not conduct a hearing.

Pretermitting whether Howard's argument is correct, Howard failed to object to the introduction of the evidence at trial. In fact, the record shows that defense counsel filed a post-trial affidavit stating that his decision not to object to the evidence was strategic. Accordingly, Howard waived the issue on appeal. See *Frazier v. State*, 252 Ga. App. 627, 630 (3) (a) (557 SE2d 12) (2001).

3. Howard also enumerates as error the trial court's consolidation of the two indictments. Specifically, Howard argues that offenses of peeping Tom and burglary with the intent to commit rape do not evidence both a common plan and a common method of operation. We disagree.

"Separate indictments may be joined for trial if it is shown that the offenses charged therein are part of a single scheme or plan." *Jones v. State*, 237 Ga. App. 715 (515 SE2d 431) (1999). "The underlying consideration regarding the issue of a joint trial on two or more indictments is whether undue or great risk of prejudice from a joint disposition of charges would result." (Citation and punctuation omitted.) *Langston v. State*, 195 Ga. App. 873, 874 (2) (395 SE2d 74) (1990). "Where the joinder is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the discretion of the trial judge." (Citation omitted.) *Jones*, supra at 716.

The evidence shows that all the victims were young, black, female students at Clark Atlanta University. The offenses involved the invasion of their privacy, and all incidents occurred in the same apartment complex within a three-week period. Further, authorities were investigating the peeping Tom incident at the time Howard attacked the second victim. In fact, some of the evidence found during the investigation of that attack resulted in evidence relevant to the charge of peeping Tom. Finally, as Howard was acquitted of one of two counts of the first indictment and three of nine counts of the second indictment, "it is . . . clear that the jury was able to distinguish the evidence and apply the law intelligently as to each offense." (Citation and punctuation omitted.) *Langston*, supra at 874 (2).

Because the charges were based upon acts constituting a single scheme or plan to prey upon young female victims and satisfy Howard's perverse desires, the trial court did not abuse its discretion in consolidating the two indictments. See, e.g., *Perkins v. State*, 212 Ga. App. 225, 226 (2) (441 SE2d 511) (1994), overruled on other grounds, *Strickland v. State*, 223 Ga. App. 772, 775 (1) (a) (479 SE2d 125) (1996).

4. Finally, Howard assigns error to the trial court's admission of similar transaction evidence of Howard's involvement in a peeping Tom incident on March 3, 1996, where Howard was arrested for entering a women's restroom at Spelman College and peering into an

occupied stall with a hand mirror. The record shows that the trial court conducted a pre-trial hearing and determined that the evidence was admissible. At trial, defense counsel preserved his objection to the evidence. We find no abuse of discretion.

> In order for similar transaction evidence to be admissible, the [s]tate must show (1) that it seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility, (2) that there is sufficient evidence to establish that the accused committed the independent offense or act, and (3) that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

(Citations omitted.) *Nelson v. State*, 255 Ga. App. 315, 319 (3) (565 SE2d 551) (2002). See also *Muckle v. State*, 202 Ga. App. 733-734 (2) (415 SE2d 299) (1992) (in prosecution for rape, aggravated sodomy, aggravated assault, and burglary, trial court did not err in admitting evidence that, on two other occasions, defendant had been a peeping Tom).

First, the state offered the testimony of the alleged victim in that peeping Tom incident, a young, black, female student, as well as the testimony of the arresting police officer, for the appropriate purpose of showing Howard's bent of mind, course of conduct, and identity. Second, the alleged victim's testimony provided sufficient evidence that Howard peered into the bathroom stall while she was in it. Finally, the acts are sufficiently similar. The trial court properly admitted the similar transaction evidence.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 6, 2004 —
RECONSIDERATION DENIED MARCH 16, 2004.

*Lawrence W. Daniel*, for appellant.

*Patrick H. Head, District Attorney, Dana J. Norman, Amy H. McChesney, Assistant District Attorneys*, for appellee.