## A04A1989. WILLIAMS v. THE STATE.
### (605 SE2d 83)

ELDRIDGE, Judge.

Eddie Lewis Williams was convicted of two counts of armed robbery, robbery by sudden snatching, and aggravated assault with a handgun, which charges arose from three robberies that occurred between November 21 and November 23, 2000, in Macon. Williams appeals from the denial of his motion for new trial. Finding no error, we affirm.

In the light most favorable to the verdict,[1] the evidence shows that on November 21, 2000, Williams went to the Spectrum convenience store located on Spring Street in Macon and approached employee John Lucas. This was Lucas' first night working at this location, and he was the only employee on duty. Williams asked where the regular clerk was. When Lucas replied that he was absent, Williams asked Lucas if Lucas had his television or the $200. Lucas informed Williams that he had no knowledge about a television, and Williams left the store. Williams stood outside in the parking lot talking with others for a short time and reentered the store. He tried to strike up a conversation with Lucas, inquiring if they had gone to high school together. Williams left the store again.

When Williams returned to the store the third time, Lucas had just finished a transaction in which the customer had given him a $100 bill. According to store policy, Lucas was placing the bill into an envelope which he planned to deposit in the store safe. Williams walked up to Lucas, and when Lucas inquired if he could help him, Williams grabbed the money from Lucas' hand, thrust something wrapped in a blue cloth at Lucas, said "I'm serious," and demanded that Lucas open the cash register and give him the cash inside. Lucas testified that he thought the object inside the cloth was a deadly weapon and, out of fear for his safety, he complied with Williams' demand. Next, Williams ordered that Lucas open the safe. When Lucas informed him that he could not open it, Williams told him to

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

give him what was below the counter. Lucas informed Williams there was nothing there, and Williams fled on foot.

On November 23, 2000, Reggie Smith went to the Spectrum convenience store on Spring Street in Macon to cash in a winning lottery ticket. As he exited his car, Smith was approached by Williams. Williams tried to start a conversation with Smith by saying he knew him from working with him at Red Lobster and mentioned something about televisions. Smith, who had never worked at Red Lobster and did not know Williams, continued into the store and cashed the lottery ticket. As he exited the store, Smith had $200 from the lottery ticket in his hand. As he passed by Williams, Williams attempted to grab the money from his hand. Some of the bills ripped but Williams managed to take $20 or $30 and run. Smith gave chase, and both men circled around Smith's car. Williams put his hand in his pocket and pulled out what appeared to Smith to be the butt of a handgun. Smith, fearing for his safety, backed away, and Williams ran down the street.

On November 25, 2000, Daniel Goad and Katie Blankenship stopped at the Fina Marathon convenience store in Macon. Goad sat in the car while Blankenship went into the store. Williams approached Goad, and at Williams' request, Goad gave him some change for the payphone. Upon Blankenship's return, Williams put his hand into his pocket, placed a hard object that was in his pocket against Goad's side, and demanded more money, Goad's necklace, Blankenship's jewelry, and the keys to the car. Both victims testified that they perceived the object in Williams' pocket to be a gun. In fear for their safety, Goad gave Williams his necklace and Blankenship gave Williams $20 or $30. Upon leaving, Williams told the victims that he had a gun. Williams fled the scene on foot.

Goad and Blankenship drove away from the Fina Marathon convenience store. As they circled the block, Blankenship saw Williams on the third floor open walkway of the nearby Value Inn. The police were called. Based on the description given by the victims, the police found Williams on the fourth floor. Goad's necklace was found in the fifth floor fire extinguisher box. At the scene, Goad and Blankenship identified Williams as the man who had robbed them. From a photo lineup, Lucas and Smith identified Williams as the person who had robbed them. At trial, all of the victims identified Williams as the perpetrator. *Held*:

1. Williams' contention that the evidence was insufficient to sustain the verdict is without merit.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence;

moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*[, supra].

(Footnote omitted.) *Phagan v. State*, 243 Ga. App. 568, 569-570 (2) (533 SE2d 757) (2000). We find the evidence recounted above amply supports Williams' convictions under the standard of *Jackson v. Virginia*, supra.

2. Williams alleges that the trial court erred in denying his motion for severance of the charged offenses. We disagree.

A two-part inquiry must be made by the trial court when a motion to sever is made.

[A] trial court must first determine whether the offenses are joined solely because they are of the same or similar character. If they are, severance is mandatory. If they are not, the court must then decide whether severance would promote a just determination of guilt or innocence as to each offense. *Terry v. State*, 259 Ga. 165, 167 (1) (377 SE2d 837) (1989); *Dingler v. State*, [233 Ga. 462 (211 SE2d 752) (1975)].

*Stewart v. State*, 277 Ga. 138, 139 (587 SE2d 602) (2003). In making this determination, the trial court is vested with discretion, and "in the exercise of that discretion it must balance the interest of the defendant with the interest of the State." (Citations omitted.) Id.

[O]ffenses have not been joined *solely* because they are of the same or similar character when evidence of one offense can be admitted upon the trial of another, i.e., when they are so strikingly similar as to evidence a common motive, plan, scheme or bend of mind. *Noble v. State*, 275 Ga. 635, 636 (2) (570 SE2d 296) [(2002)]; *Johnson v. State*, [257 Ga. 731, 732 (363 SE2d 540) (1988)]; *Carroll v. State*, 199 Ga. App. 8, 9 (403 SE2d 875) (1991).

Id. at 140.

In this case, all of the robberies occurred during November 2000. All of the robberies occurred at Macon convenience stores; two of the robberies occurred at the same Spectrum, while the third occurred at a Fina Marathon, which is located within a mile or less of the Spectrum. Williams began each crime by engaging the victim in conversation and later demanding money and other items. In each crime, Williams showed the victims part of an object in such a manner as to make the victims believe he had a gun. In each case, after taking

the money and other items, Williams fled the scene on foot without following through with any threatened physical violence against the victim. Therefore, the three robberies that formed the basis of the charges against Williams show a common plan, a common scheme, and a common purpose, and were sufficiently similar that evidence of one would have been admissible in the trials of the other robberies. Accordingly, severance was not mandatory.

Thus, we must turn to the second part of the inquiry and "determine whether the trier of fact would be able to fairly and intelligently judge each offense. In deciding whether a trier of fact can parse the evidence and apply the law to each charge, a trial court must consider the number and complexity of the offenses charged." (Footnotes omitted.) *Collier v. State*, 266 Ga. App. 345, 356 (3) (a) (596 SE2d 795) (2004). See also *Stewart v. State*, supra at 139. Having carefully reviewed the evidence presented at trial, we cannot say that the number of offenses charged and the complexity of the evidence offered rendered the jury unable to distinguish the evidence and apply the law fairly and intelligently to each charge. Hence, we find that the trial court did not abuse its discretion in denying the motion to sever and allowing the joinder of the offenses for trial.

3. Williams alleges that the trial court improperly admitted a pre-trial photographic identification of Williams by Lucas and Smith and improperly admitted evidence of an on-the-scene showup identification by Goad and Blankenship.

(a) Williams argues that the photo lineup was impermissibly suggestive because he was the only one with facial scarring. At the motion in limine, defense counsel argued that in the picture of Williams, his nose appeared to be reddened as if he had a scratch or a scar.

> Convictions based on a pretrial identification by photograph and a subsequent identification at trial will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Neil v. Biggers*, 409 U. S. 188, 196 (93 SC 375, 34 LE2d 401) (1972); see *Miller v. State*, 270 Ga. 741 (2) (512 SE2d 272) (1999). A court need not consider whether there was a substantial likelihood of misidentification if it finds that the identification procedure was not impermissibly suggestive. Id. An identification procedure becomes impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "This is our suspect." Id. at 743 (2).

(Citation and punctuation omitted.) *Williams v. State*, 272 Ga. 828-829 (2) (537 SE2d 39) (2000).

A copy of the photographic display has been included in the record before this Court. An examination of State's Exhibit 8 shows each of the men in the lineup appear to be of the same race, the same complexion, the same approximate age, have the same facial structure, and similar facial hair. A mark on Williams' nose is not visible on the copy that is part of our record. Upon viewing the original photographic lineup, the trial court found the mark "not clear to the Court, the first time the Court looked at it, that number 4 had a scratch." Under these circumstances we cannot say that any imperfection in the photographic lineup created the kind of suggestiveness that would lead the viewer inexorably to conclude that Williams was the suspect. The trial court's determination that the lineup was not impermissibly suggestive is not clearly erroneous. *Williams v. State*, 275 Ga. 622, 623-624 (2) (571 SE2d 385) (2002).

However, even assuming that the lineup was suggestive, we find no likelihood of misidentification under the facts and circumstances in this case. The factors to be considered in evaluating the likelihood of misidentification include:

> (1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the accused; (4) the witness's level of certainty at the confrontation with the accused; and (5) the length of time between the crime and the confrontation. The ultimate question is, whether under the totality of the circumstances, the identification is reliable.

(Footnote omitted.) *Jones v. State*, 273 Ga. 213, 216 (2) (539 SE2d 143) (2000); *Neil v. Biggers*, supra at 199. Here, Lucas testified that the store was well lit; that he had a five-to-ten minute conversation with the robber; and that he could see the robber clearly both during the conversation and during the robbery. Smith testified that he could see Williams clearly when he spoke to him outside the store and when he snatched the money from him and that he could "identify him if he saw him 20 years from now." Further, Lucas was shown two different photographic lineups. The first photographic lineup did not include Williams, and Lucas stated he did not recognize the perpetrator therein, even though the men in the first photographic lineup were roughly of the same physical description as Williams. Several days later, a second photographic lineup was prepared which included Williams, and it was shown separately to Lucas and Smith. Both immediately picked out Williams as the perpetrator. Lucas stated he

was 90 percent certain Williams was the perpetrator, while Smith was positive that Williams robbed him. Under the facts of this case, there was no substantial likelihood of misidentification, and the trial court did not err in allowing evidence of Lucas' and Smith's pre-trial photographic identification of Williams.

(b) Williams contends that the one-on-one identification at the Value Inn by Goad and Blankenship was impermissibly suggestive.

Williams' pre-trial motion in limine went only to the photographic lineup. At trial, when Goad, Blankenship, and the two police officers testified to Goad's and Blankenship's identification of Williams at the Value Inn, defense counsel made no objection. Having failed to object, Williams has waived this enumeration of error. See *Williams v. State*, supra, 275 Ga. 624; *Rutledge v. State*, 237 Ga. App. 390, 392 (3) (515 SE2d 1) (1999).

Even if not waived, there is no error.

> Although showing suspects singly to a witness for identification purposes is inherently suggestive, an identification need not be excluded as long as under all the circumstances the identification was reliable notwithstanding any suggestive procedure. Our inquiry here is whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification.

(Footnotes omitted.) *Anderson v. State*, 265 Ga. App. 428, 431 (3) (a) (594 SE2d 669) (2004). The same factors are to be considered as set out in *Jones v. State*, supra.[2] Applying these factors, we find that Goad and Blankenship testified that they could see Williams clearly during the robbery. Blankenship spotted Williams a few minutes after the robbery on the open third floor walkway of the nearby Value Inn. The police were called within five minutes of the robbery. The police arrived several minutes later. Both victims were able to give police a description of Williams, including the clothing he was wearing. The police searched the Value Inn for 20 to 30 minutes and found Williams, who matched the description given to them by the victims. When Williams was brought down to the hotel lobby, both victims immediately stated with certainty that he was the perpetrator. Accordingly, the evidence supports the determination that, under the totality of the circumstances, there was no likelihood of irreparable misidentification.

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

---

[2] See Division 3 (a).

DECIDED SEPTEMBER 21, 2004.

Renate D. Moody, for appellant.

Howard Z. Simms, District Attorney, Dorothy V. Hull, Assistant District Attorney, for appellee.