## A04A1921. TAYLOR v. THE STATE.
### (610 SE2d 668)

ADAMS, Judge.

Alonzo Bobo Taylor appeals from the denial of his motion for new trial following his conviction on charges of aggravated assault and burglary. We affirm.

Viewed in the light most favorable to the verdict, the evidence showed that on April 26, 2000, Annie Carver was an 80-year-old woman, who lived alone, in Fitzgerald, Georgia. Between 8:00 and 8:30 each night, Carver generally went back to her bedroom to lie down and watch television. She would normally turn off the television and go to sleep after the news at around 11:30 p.m.

On the night of April 26, as Carver was lying in bed, she heard a knock at her front door at somewhere between 11:00 and 11:30. She went to the window in her front bedroom and looked out. Carver saw a man she did not recognize standing at her front door. The lights were off in the house at the time, and Carver testified that there is a street light ten to fifteen feet in the next lot and a street light at the corner. She said that there is usually so much light shining into her living room from outside that she does not need to turn on a light unless she is reading or sewing. After spotting the man, Carver went to the door and, without opening it, asked if she could help him.

The man replied that he was supposed to pick up a package at a Ms. Prescott's house at a certain address on her street. Although Carver told the man that he had the wrong address, he insisted that Carver's house was where he was supposed to pick up the package. Carver testified that she talked the man off the porch, but he turned around and came back. This occurred five or six times. After she

would persuade the man that he had the wrong house, he would step off the porch, go a short way, then turn around and come back, insisting that he was supposed to pick up the package at her house.

During her exchanges with the man, Carver could see him through a glass window in her front door by pulling a curtain aside about three inches. They stood about one and one-half to two feet apart while they conversed. Carver testified that each conversation she had with the man lasted two to three minutes, for a total of about five to ten minutes. Carver testified that the man was polite, but insistent during these encounters.

The last time the man approached her door, Carver held up a gun, a .38 special, that she kept for protection. She held the gun so that the man could see it, but did not point it at him. At the sight of the gun, the man left the porch, cursing as he went. He threatened Carver, saying that he would come back and "beat her G. D. brains out." Carver stepped back about five feet to the telephone and called 911. As Carver was making the call, the man began breaking the window in her front door with a piece of cement he held in his hand. She told the 911 operator to get help to her in a hurry. Carver was close enough to the door while she was making the call that she was struck in the forehead, across the face and in her ear by flying slivers of glass although most of the glass was deflected by the curtain across the window.

After he broke the glass out of the window, the man reached in through the opening and tried to grab Carver. The man kept reaching through the door, telling Carver that he was going to beat her brains out. Carver testified that she was afraid and shot at the man twice, although she was not sure if she hit him. Carver testified that one of her shots evidently knocked the concrete out of the man's hand, but he was not deterred and still tried to reach through the opening toward her. He did not leave until sirens could be heard as police approached her house.

When the police arrived, Carver described the man as a tall and slender black man, with full facial hair, as if he had not shaved in two or three days. Sergeant James Reynolds of the Fitzgerald Police Department was one of the officers who responded to the 911 call that night. After receiving Carver's description, he went looking for the man. About two minutes later, he saw a man matching the description around the corner from Carver's house. As he and another officer approached, they observed that the man appeared to be intoxicated and bleeding from the wrist. The officers placed the man in the back of a patrol car and returned to Carver's house with the intention of either confirming that he was Carver's attacker or eliminating him as a suspect.

Carver testified that about four to six minutes after the officers arrived, one of them brought a man in custody for her to identify. Carver said that police asked her to come look at a man they had in the police car. They did not tell her that they had found her attacker. She testified that the man police brought to her was definitely the man that had attacked her. She said that she recognized him immediately. At trial, Carver identified Taylor as the man who attacked her that night.

Reynolds took Taylor to the emergency room to get treatment for his injured wrist. He testified that at the hospital, Taylor became angry and began yelling at the police officers, doctors and nurses. The emergency room doctor testified that he treated Taylor for a deep puncture wound to the left wrist that was bleeding so profusely that it required stitches to stop the bleeding. The doctor, who was tendered, without objection, as an expert in emergency medicine, also testified that in his opinion the wound had been caused by a gunshot. The radiologist who saw Taylor that night was also tendered, without objection, as an expert for the State. He testified that an x-ray he took that night revealed the presence of a large bullet and a number of metal fragments embedded in Taylor's left wrist.

1. Taylor first contends that the evidence was insufficient to support his conviction because the out-of-court identification was impermissibly tainted by a defective showup method. He asserts that he was arrested that night only because he was black and walking down the street.

We note as an initial matter that Taylor raised no objection to the out-of-court identification below. But even if he had properly raised such an objection, this enumeration of error has no merit. The inherently suggestive nature of a one-on-one showup does not render the subsequent identification automatically inadmissible. *Miller v. State*, 266 Ga. App. 378, 382 (1) (597 SE2d 475) (2004). Rather, this Court has recognized that depending upon the circumstances such a confrontation can actually "enhance accuracy and reliability," and potentially expedite the release of innocent suspects. (Citation and punctuation omitted.) Id. It is up to the trial court to determine under the totality of the circumstances whether the police procedure was impermissibly suggestive, and "[i]f so, the court must then decide whether, given the totality of circumstances, there was a substantial likelihood of misidentification." (Citation and punctuation omitted.) Id.

In making this determination, the court must consider a number of factors, including:

(1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention; (3) the

accuracy of the witness's prior description of the accused; (4) the witness's level of certainty at the confrontation with the accused; and (5) the length of time between the crime and the confrontation. The ultimate question is, whether under the totality of the circumstances, the identification is reliable.

(Citation and punctuation omitted.) *Williams v. State*, 269 Ga. App. 673, 677 (3) (a) (605 SE2d 83) (2004).

Here, the evidence showed that there was light coming onto Carver's porch from nearby street lights when she looked out the bedroom window or through the gap in the curtain on her front door. Carver stood only about one and one-half to two feet away from her attacker during their initial conversations, which lasted for a period of between five and ten minutes. She said that her "whole attention" remained upon him during the encounter because she believed that if she focused on him, she would "be safe." Carver described her attacker as a slender, black man with full facial hair. The evidence showed that Taylor was 6′ 1″ tall, weighed 190 pounds, and had a beard at the time of his arrest. She also testified that when she made the identification, approximately five minutes after the crime occurred, she was "definitely sure" that he was the one who had attacked her. Under these circumstances, we cannot agree with Taylor's argument that the showup was impermissibly suggestive, *Miller v. State*, 266 Ga. App. at 383-384 (1), and his argument that this identification somehow rendered the evidence insufficient to support his convictions is without merit.

Based upon our review of the record, we find that the evidence was sufficient for the jury to find Taylor guilty of the crimes charged beyond a reasonable doubt. OCGA §§ 16-7-1; 16-5-20; 16-5-21; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Taylor also argues that the trial court erred in overruling his objection to Carver's in-court identification and in denying him the right to cross-examine Carver before the court admitted the evidence. He argues on appeal that the in-court identification was tainted by the impermissibly suggestive out-of-court identification. But Taylor did not object to the in-court identification at trial on this ground. Rather, his stated objection was that the in-court identification lacked a proper foundation. Thus, he failed to preserve this issue for appellate review. "A trial objection on a specific ground waives appellate review of other grounds." (Citations and punctuation omitted.) *Lyons v. State*, 266 Ga. App. 89 (1) (596 SE2d 226) (2004). Moreover, as we have already held in Division 1 above, that the out-of-court identification was not impermissibly suggestive, Taylor's argument on this enumeration has no merit.

3. Taylor next asserts that the trial court erred in admitting into evidence a photograph purportedly taken of him at the time of his arrest because the officer who identified the photograph at trial did not actually take the picture, nor did he testify that the photo was a fair and accurate depiction of Taylor that night. Sergeant Reynolds of the Fitzgerald Police Department identified the photograph at trial, but he testified that the photograph was taken by the Ben Hill County Sheriff's Office, where Taylor was "booked in." Under Georgia law, "any witness familiar with the subject depicted can authenticate a photograph; the witness need not be the photographer nor have been present when the photograph was taken." (Footnote omitted.) *Davis v. State*, 253 Ga. App. 803, 806 (6) (560 SE2d 711) (2002). "Moreover, the quantum of evidence required to sufficiently identify the photograph is a matter within the sound discretion of the trial court, and the trial court's decision will not be overturned absent an abuse of discretion." (Footnote omitted.) *Pless v. State*, 247 Ga. App. 786, 787 (2) (545 SE2d 340) (2001).

Reynolds was the officer who took Taylor into custody that night, transported him back to Carver's house for identification (or elimination) as a suspect, then transported him to the hospital for treatment, and later took him on to the sheriff's office for booking. He testified that the photograph accurately depicted the way Taylor looked that night. We find no abuse of discretion by the trial court in admitting the photograph into evidence. *Pless v. State*, 247 Ga. App. at 787 (2).

4. Taylor further contends that the trial court erred in overruling his objection and denying his motion for a mistrial based upon a comment made during the State's closing argument. Taylor objected and moved for mistrial after the prosecutor stated, "Now, the question of entry, ladies and gentlemen, in this case, the undisputed testimony, the only testimony is — where are the photographs?" Taylor asserts that this statement impermissibly implied that he had the burden of proof and the duty to testify.

But we find that this remark was "a permissible comment on defendant's failure to adduce evidence rebutting the State's evidence[, which] is neither burden shifting nor an impermissible comment on defendant's failure to testify." *Miller v. State*, 240 Ga. App. 18, 19 (2) (522 SE2d 519) (1999). See also *Turner v. State*, 241 Ga. App. 431, 438 (9) (526 SE2d 95) (1999).

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED FEBRUARY 18, 2005 — 

*David E. Morgan III*, for appellant.

*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney*, for appellee.