A06A0475. CHATFIELD v. THE STATE.
(630 SE2d 178)

BARNES, Judge.

Michael Lewis Chatfield appeals his convictions for hindering a person attempting to make an emergency telephone call and two counts of aggravated assault. He argues that the trial court erred in allowing the State to submit evidence of three similar transactions, and that the two aggravated assault counts should merge for sentencing purposes. For the reasons that follow, we affirm.

1. Chatfield contends that the trial court erred in allowing the State to introduce evidence of similar transactions. After a hearing

pursuant to Uniform Superior Court Rule 31.3 (B), the trial court must determine whether the State has shown three things: (1) that it seeks to introduce evidence of the independent offense for an appropriate purpose and not to show the defendant's bad character; (2) that sufficient evidence establishes that the accused committed the independent offense; and (3) that a sufficient connection or similarity exists between the independent offense and the crime charged, so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). We will reverse a trial court's decision to admit evidence of a similar transaction only if the court has abused its discretion. *Mangham v. State*, 234 Ga. App. 567, 569 (1) (507 SE2d 806) (1998).

(a) Chatfield first argues that neither the State nor the trial court enunciated the appropriate purpose for which the evidence was being offered. This claim, however, was waived because Chatfield failed to raise it in the trial court. At the pre-trial hearing, Chatfield argued only that insufficient evidence showed he committed the prior acts and that the acts were insufficiently similar. Thus we will not consider it for the first time on appeal. *Jennings v. State*, 277 Ga. App. 159, 162 (3) (626 SE2d 155) (2006). Even if Chatfield had preserved the issue, we would find no error. The State's notice of intent to present similar transactions specified that the incidents would be submitted to show the appropriate purposes of course of conduct and bent of mind. The trial court found that the State sought to introduce the independent offenses, not to raise improper character inferences, but for appropriate purposes. Finally, before the first similar transaction witness testified about the prior offenses, the court gave the jury limiting instructions, informing them among other things that evidence of other offenses "may be considered for the limited purpose of showing, if it does, the identity of the perpetrator, the state of mind, knowledge, or intent of the defendant in the crimes charged in the case now on trial. Such evidence, if any, may not be considered by you for any other purpose." The judge reminded the jurors of this limiting instruction when Chatfield's ex-wife testified, and gave the instruction again in full during the final jury charges. Thus we find no error.

(b) Chatfield contends that the State failed to show sufficient evidence that he actually committed the prior offenses, because the victim, Chatfield's ex-wife, never reported two of the three incidents to the police. He also argued that the victim's testimony was impeached by another witness, who said the victim stated she would lie in court to keep her children away from Chatfield. These factors affect the weight of the evidence, but not its admissibility. *Johnson v. State*, 266 Ga. 775, 778 (6) (470 SE2d 637) (1996).

(c) Chatfield argues that the incidents were not sufficiently similar so that proof of the former tended to prove the latter. The test

is not the number of similarities between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. *Sims v. State*, 212 Ga. App. 426 (2) (442 SE2d 292) (1994). In this case, Chatfield was accused of aggravated assault upon his wife (now divorced from Chatfield) with a gun and with a knife in December 2002. His ex-wife testified regarding three incidents of violence Chatfield committed against her. During the first incident, while she was pregnant with the couple's first child in 1998, she testified that Chatfield began arguing with her, pushed her down onto their bed, held a gun to her head, and threatened to kill her. In the second incident, which took place in March or April 1999, the ex-wife was talking to a roommate when Chatfield came into the room, grabbed her, pushed her head into a wall, then took her into their bedroom where he beat her with a belt. The roommate corroborated the incident and testified that she saw the belt marks on the ex-wife's back.

The third incident in June 2001 took place at Chatfield's trailer, as did the first two. Chatfield pulled his ex-wife out of their car and up the steps by her hair, pushed her head into the side of the trailer, bit her ear and face, and hit her multiple times on her head and face. He was holding a beer in one hand while he did this, and said, "Bitch, you don't think I'll kill you." A neighbor heard her screaming for help and called the police, who came and arrested Chatfield.

The offenses for which Chatfield was on trial took place in December 2002, about two months after Chatfield married his second wife. He had been drinking and began arguing with his wife, then flipped over a living room table and began throwing things. She went into the bedroom and he followed, cursing her and calling her names. He picked up a .22 rifle from the corner of the room and pointed it at her while she begged for her life. As she dropped her head, she heard him pull the trigger of the gun, which fired into the headboard behind her, then he fired again at the bedroom wall. She raised her head to look at him, and he put the gun to her forehead, asking, "Bitch, are you ready to die?" He turned the gun around and hit her on her head and back with the butt, then began hitting the bed and finally threw the gun away.

The wife ran into the kitchen and tried to grab the telephone to call for help, but Chatfield tore it away from her. He twisted her hair tight with one hand and held a knife to her throat with the other, saying he would kill her if the police came and he would hurt her no matter what. They struggled to the ground and Chatfield sat on her, threw away the knife, picked up a barbell, and threatened to smash her face in with it, bringing it down over and over just missing her

head. He stopped and said she was just like his first wife, all she would do was call the law on him and have him locked up.

Chatfield's wife wriggled free. Chatfield grabbed another kitchen knife and stabbed her in the arm. She ran outside and he pinned her to her car, trying to stab her but scratching the car hood instead. He let her go when she "grabbed everything he had below and twisted." The wife ran across the street to her neighbor, who called the police, and who corroborated that she came to his door bleeding, crying, and scared, saying that Chatfield was trying to kill her.

"In cases of domestic violence, prior incidents of abuse against family members or sexual partners are more generally permitted because there is a logical connection between violent acts against two different persons with whom the accused had a similar emotional or intimate attachment." (Footnote omitted.) *Thomas v. State*, 246 Ga. App. 448, 449 (1) (540 SE2d 662) (2000). In this case, Chatfield committed both the similar transactions and the crimes for which he was on trial against his current wife. In ruling the evidence admissible, the trial court noted that Chatfield pled guilty to offenses arising out of the last similar transaction (pleas that the State later presented as evidence of aggravation). One of those prior offenses involved a weapon, as did one of the current offenses, and in two prior offenses Chatfield held his victim's head and propelled her into a wall. All of the offenses occurred within a relatively short time frame. The trial court did not abuse its discretion by allowing the State to present this similar transaction evidence and thus we find no error. *Maskivish v. State*, 276 Ga. App. 701, 705 (4) (624 SE2d 160) (2005).

2. Chatfield asserts that the two aggravated assault convictions should be merged because the crimes were committed at the same time and place and comprised one long criminal act, for which he cannot be punished twice. "In determining whether merger has occurred, the key question is whether the different offenses are proven with the same facts. If one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge." (Citations and punctuation omitted.) *Kellibrew v. State*, 239 Ga. App. 783, 786 (4) (521 SE2d 921) (1999).

The first count of the indictment in this case charges Chatfield with committing aggravated assault with a gun by firing it above the head of the victim. The second count charges him with committing aggravated assault with a knife by stabbing the right arm of the victim. The evidence showed that after Chatfield terrorized the victim with a gun, she escaped briefly and attempted to make a telephone call before he caught her a second time and terrorized her with a knife. The crimes do not merge because the first assault with the gun was complete when the victim escaped to the kitchen, after

which the second assault with the knife occurred. "Accordingly, the underlying facts used to prove each offense are different and the evidence showed that one crime was complete before the other occurred." (Citations omitted.) *O'Neal v. State*, 228 Ga. App. 162, 164 (2) (491 SE2d 216) (1997) (offenses of aggravated assault with intent to rob and aggravated assault with a deadly weapon did not merge).

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED APRIL 19, 2006.

*Virgil L. Brown & Associates, Ronald J. Ellington, Brent D. Hutchison*, for appellant.

*Scott L. Ballard, District Attorney, Cindy L. Spindler, Assistant District Attorney*, for appellee.