A06A0879. HARMON v. THE STATE.
(635 SE2d 348)

RUFFIN, Chief Judge.

A jury found John Thomas Harmon guilty of one count of public indecency and four counts of sexual battery.[1] On appeal, Harmon argues that the trial court erred in admitting his statement to law enforcement, failing to sever his trial on the public indecency charge, admitting similar transaction evidence, and sentencing him as a felon on the public indecency charge. Finding no error, we affirm.

Viewed in a light favorable to the verdict,[2] the evidence shows that Harmon admitted at trial that he committed the four sexual batteries with which he was charged, stating "I did lick the ladies on their butts." In one incident, Harmon approached a woman shopping for shoes at a Target store in Douglasville and bumped into her from behind. Harmon told the woman that she looked good and offered to buy her a pair of shoes. He had money in his hand. After she refused his offer, Harmon made sexual comments to the woman and then pressed his face into her buttocks and licked her arm. As she fled, he unzipped his pants and began fondling himself. Harmon was convicted of one count of sexual battery for this incident.

Three days later, Harmon followed a woman who was shopping at a Wal-Mart in Douglas County. As the woman bent to reach an item on the shelf, Harmon bumped his head into her buttocks three times. Harmon then told the woman she was beautiful and asked for her phone number. When she responded negatively, he left. Harmon was convicted of three counts of sexual battery for this episode.

Harmon was also convicted of public indecency for an incident which took place three weeks prior to the sexual batteries. A man driving a burgundy vehicle honked at a woman walking on a Douglas County street. The man followed her onto a side street and backed his vehicle into a nearby driveway. The woman identified the driver as Harmon in both a photographic lineup and at trial. Harmon exposed himself to the woman, offered her money and told her "to stand right there." She kept walking and called 911 on her cellular phone, reporting the vehicle's tag number. Harmon followed her in his

---

[1] It found him not guilty of failing to comply with the requirements of the sex offender registry.

[2] See *Quimbley v. State*, 276 Ga. App. 174 (622 SE2d 879) (2005).

vehicle, continuing to expose himself. At trial, Harmon denied exposing himself to the woman, although he admitted following her, offering her money, and telling her "to stand right there."

The victim of the Wal-Mart incident subsequently saw Harmon at a car wash, recognized him as her assailant, and called 911. She provided law enforcement with the vehicle's tag number, and officers found the vehicle at Harmon's nearby residence. Several officers spoke to Harmon outside his residence and asked him to go to the police station to discuss an incident involving a man matching his description and driving a similar vehicle. Harmon agreed and rode to the police station in the back of a marked police vehicle. He was not handcuffed or placed under arrest at that time.

Harmon spoke with a detective from the Douglasville Police Department in an interview room. The room was not locked and Harmon was not handcuffed. During the conversation, Harmon did not ask to leave and did not request an attorney. He admitted to the detective that his wife owned the vehicle whose tag number had been reported by two of the victims, and that he was the only man who drove the vehicle. The entire interview was videotaped and viewed by the trial court. Harmon was subsequently arrested and read his *Miranda*[3] rights.

1. Harmon first contends that the trial court erred in admitting his statement because it was made while he was in custody and had not been read his *Miranda* rights. The test for determining whether a person is in custody such that he must be read his *Miranda* rights is whether a reasonable person in his situation would have believed "he was physically deprived of his freedom of action in a significant way."[4] Harmon argues that a reasonable person who was approached by four police officers at his home, taken to the police station in a police vehicle, and questioned in an "interrogation room" would have felt his liberty was restrained.

On appeal, we uphold a trial court's finding regarding the admissibility of a statement unless it is clearly erroneous.[5] Here, Harmon voluntarily accompanied officers to the police station and was never handcuffed.[6] While he rode in a police vehicle, he was taken to the lobby of the police services building, where the detectives had their offices, rather than the booking area.[7] The interview took place in an unlocked room.[8] Harmon went to the police station voluntarily,

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[4] *Bell v. State*, 280 Ga. 562, 564 (2) (a) (629 SE2d 213) (2006).

[5] See id.

[6] See id.

[7] See *Gabriel v. State*, 280 Ga. 237, 237-238 (2) (626 SE2d 491) (2006).

[8] See *State v. Parks*, 273 Ga. App. 682, 683 (616 SE2d 456) (2005).

and he was not restrained and never asked to leave while he was being interviewed.[9] Under these circumstances, the trial court did not err in concluding that Harmon was not in custody and admitting his statement.[10]

Moreover, in light of the overwhelming evidence of Harmon's guilt, including his admission at trial that he committed the sexual batteries and followed and spoke to the victim of the public indecency and the victims' identification of him, any error in the admission of his statement was harmless.[11]

2. Harmon asserts that the trial court erred in refusing to sever his trial on the public indecency charge from the sexual battery charges because the incidents were unrelated to one another and were so inflammatory that the jury would not be able to make a fair determination on each offense without considering the other. We disagree.

> There is an absolute right to severance where offenses have been joined solely on the ground that they are of the same or similar character, but severance is within the trial court's discretion when the offenses are so similar as to show a common scheme or plan. The court must consider whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.[12]

We evaluate the trial court's decision on severance under an abuse of discretion standard.[13]

Here, the evidence was sufficient for the trial court to conclude that the various charges against Harmon "constitut[ed] a single scheme or plan to prey upon young female victims and satisfy [his] [prurient] desires."[14] The sexual batteries and the public indecency all took place within a month's period of time and within a five-mile radius.[15] The three victims were women between the ages of twenty

---

[9] See *Bell*, supra; *Poole v. State*, 270 Ga. App. 432, 433-434 (1) (a) (606 SE2d 878) (2004).

[10] See *Bolden v. State*, 278 Ga. 459, 462 (3) (604 SE2d 133) (2004).

[11] See *Coleman v. State*, 271 Ga. 800, 804 (6) (523 SE2d 852) (1999); *McCoy v. State*, 234 Ga. App. 879, 882 (1) (b) (508 SE2d 224) (1998).

[12] (Citation and punctuation omitted.) *Rollinson v. State*, 276 Ga. App. 375, 380 (2) (623 SE2d 211) (2005).

[13] See id.

[14] *Howard v. State*, 266 Ga. App. 281, 285 (3) (596 SE2d 627) (2004).

[15] See *Thrasher v. State*, 261 Ga. App. 650, 652 (3) (583 SE2d 504) (2003) ("The offenses 'were properly joined because they constituted a series of criminal acts closely connected by geography, time, and manner so as to constitute a scheme or plan of criminal conduct.'").

and twenty-nine.[16] Harmon approached each victim in a public place and, after attempting to engage them in conversation of a sexual nature, behaved in a sexually aggressive manner.[17] In one instance of sexual battery and in the public indecency incident, he offered the victims money and fondled himself.

Our review of the evidence shows that the number of offenses charged and the complexity of the evidence were not such that the jury would be unable to distinguish the evidence of each charge.[18] And since the jury acquitted Harmon of failing to register as a sex offender, "it is clear that the jury was able to distinguish the evidence and apply the law intelligently as to each offense."[19] Accordingly, the trial court did not abuse its discretion in refusing to sever the public indecency charge for trial.[20]

3. Harmon argues that the trial court erred in admitting similar transaction evidence. Similar transaction evidence is admissible if (1) the evidence is admitted for a proper purpose; (2) it is established that the defendant committed the separate offense; and (3) there is sufficient similarity between the separate offense and the crime charged that proof of the former tends to prove the latter.[21] We review the trial court's decision to admit such evidence for abuse of discretion.[22]

Here, the State introduced three similar transactions. In the first incident, Harmon approached a woman in a grocery store, engaged her in conversation, and, as she reached for an item on the shelf, bit her on the buttocks. In the second incident, Harmon sat next to a teenager on a public bus, engaged her in conversation, then touched her thigh and exposed himself to her. In the third incident, Harmon spoke to a woman waiting at the train station, then exposed himself to her. The State introduced certified copies of Harmon's convictions in the similar transactions, and at trial all three of the similar transaction victims identified Harmon as the perpetrator.

The trial court admitted these similar transactions to show Harmon's course of conduct and intent. We have held that this is a proper purpose for admitting similar transactions, especially in a

---

[16] See *Howard*, supra.

[17] See *Quenga v. State*, 270 Ga. App. 141, 145-146 (2) (605 SE2d 860) (2004) (although charges differed, fact that defendant engaged in "overtly sexual" conduct with all victims was evidence of common scheme or plan).

[18] See *Williams v. State*, 269 Ga. App. 673, 676 (2) (605 SE2d 83) (2004).

[19] (Punctuation omitted.) *Howard*, supra.

[20] See id.

[21] See *Chatfield v. State*, 279 Ga. App. 32, 33 (1) (630 SE2d 178) (2006).

[22] See id.

case involving sexual offenses.[23] The State established that Harmon committed all three of the similar transactions.[24] And there is sufficient similarity between the similar transactions and the offenses charged that proof of the former tends to prove the latter.[25] In each of the similar transactions, as in the incidents for which Harmon was on trial, he approached a woman previously unknown to him in a public place, attempted to talk to her, and then engaged in sexually inappropriate behavior. In the sexual battery incidents and one similar transaction, Harmon either bit or licked the victims on their buttocks while they were shopping. In the public indecency incident and two of the similar transactions, Harmon exposed himself. Under these circumstances, the trial court did not abuse its discretion in admitting the similar transaction evidence.[26]

4. Finally, Harmon claims that the trial court erred in convicting him of a felony on the public indecency charge and in sentencing him to serve five years on that charge. Harmon pled guilty to public indecency in 1997 and 2003. Because Harmon has two prior public indecency convictions, the trial court was required to sentence him as a felon rather than a misdemeanant.[27]

On appeal, Harmon challenges his 1997 sentence for public indecency, arguing that it should have merged into the contemporaneous sentence for child molestation arising from the same incident, and thus cannot be used in calculating the number of his public indecency convictions for sentencing. But Harmon pled guilty to both public indecency and child molestation, and thus admitted to committing both crimes.[28] As such, he is estopped from now claiming that any of the counts to which he pled guilty should have merged.[29] Since Harmon had two prior public indecency convictions and the sentence of five years falls within the allowable statutory range, we must affirm his conviction.[30]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

---

[23] See *Robbins v. State*, 277 Ga. App. 843, 844-845 (1) (627 SE2d 810) (2006).

[24] See *Enurah v. State*, 279 Ga. App. 883, 885 (2) (633 SE2d 52) (2006).

[25] See id.; *Wagner v. State*, 253 Ga. App. 874, 875-876 (1) (a) (560 SE2d 754) (2002) ("[w]hen forcible sexual assaults are involved, there is at least much sociological evidence to support the conclusion that this type of deviant sexual behavior is a sufficiently isolated abnormality so that proof of the propensity of the defendant to engage in it is at least admissible, and to this extent proof of the one tends to establish the other") (punctuation omitted).

[26] See *Martin v. State*, 219 Ga. App. 277, 279 (2) (a) (464 SE2d 872) (1995).

[27] See OCGA § 16-6-8 (c) ("Upon a third or subsequent conviction for public indecency . . . a person shall be guilty of a felony and shall be punished by imprisonment for not less than one nor more than five years.").

[28] See *Kemp v. Simpson*, 278 Ga. 439, 439-440 (603 SE2d 267) (2004).

[29] See *Glover v. State*, 258 Ga. App. 527, 529 (574 SE2d 565) (2002).

[30] See OCGA § 16-6-8 (c); *Rehberger v. State*, 267 Ga. App. 778, 779 (600 SE2d 635) (2004).

DECIDED AUGUST 10, 2006 —

*Sexton, Key & Hendrix, Joseph S. Key*, for appellant.
*David McDade, District Attorney, Jeffrey M. Gore, Assistant District Attorney*, for appellee.