### A08A0814. AXELBURG v. THE STATE.

(669 SE2d 439)

PHIPPS, Judge.

Michael Scott Axelburg was convicted of aggravated sexual battery against a teenaged babysitter who was spending the night at his house. His defense at trial was that he did not have the requisite intent to commit the crime, because the underlying act occurred while he was sleepwalking.[1] On appeal, Axelburg argues that the trial court erroneously admitted into evidence a video recording and transcript of his police interrogation, contending that the interrogation occurred in violation of his *Miranda* rights and also that it erroneously presented to the jury the interrogating officer's negative comments concerning Axelburg's credibility and sleepwalking defense. He also contends that the trial court erred in applying the rule of sequestration to his sleepwalking expert. For the reasons set forth below, we find no *Miranda* violation and no error in the court's application of the rule of sequestration. We find, however, that the court should have required the redaction of certain of the interrogating officer's comments from the recorded interrogation and transcript, and for this reason we reverse Axelburg's conviction. Because we find that the evidence was sufficient to support the verdict, the case may be retried.[2]

On June 18, 2004, 16-year-old K. M. spent the night at the Axelburg home, to be present to babysit some of the Axelburg children early the following morning. During the night, K. M. awoke to find Axelburg next to her with his fingers in her vagina. When K. M. moved, Axelburg left the room. K. M. did not confront Axelburg at that time, but after he left the house the next morning, she told her mother what had happened, and the police were contacted.

---

[1] See generally *Smith v. State*, 284 Ga. 33, 34-36 (2) (663 SE2d 155) (2008) (discussing sleepwalking defense to criminal offense).

[2] See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).

A police officer took K. M. and the Axelburg children to the sheriff's office, leaving a note so indicating on Axelburg's front door. When Axelburg returned later that day and found the note, he drove to the sheriff's office. His wife accompanied him. On the way, Axelburg learned from K. M.'s mother of the allegation.

At the sheriff's office, an officer immediately took Axelburg to an interview room to be questioned. Axelburg first stated that he had not done the act described and denied any knowledge about K. M.'s allegation. But as the interview progressed, Axelburg conceded that something untoward might have occurred the night before, but he had no recollection of any such incident. He also stated that he was a sleepwalker. The officer accused Axelburg of lying about sleepwalking. Later in the interview Axelburg admitted that he recalled having awoken to find himself standing over K. M. with his hand inside her. At this point, the officer read Axelburg his *Miranda* rights. Axelburg waived these rights and then provided more details about what he recalled when he woke up.

At trial, Axelburg presented evidence that he had a history of sleepwalking. The state countered that Axelburg had not been sleepwalking when he inappropriately touched K. M. Both sides presented expert testimony on whether Axelburg could have committed the alleged act while sleepwalking.

1. Axelburg argues that the trial court erred in admitting the recording and transcript of his interrogation into evidence, because a significant portion of the interrogation occurred before he was given a *Miranda* warning. We disagree.

*Miranda* warnings apply to interrogations where a person has been "taken into custody or otherwise deprived of [his] freedom of action in any significant way."[3] Whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous.[4] We consider whether, under all the circumstances, a reasonable person — "one neither overly apprehensive because of criminal conduct nor insensitive to the seriousness of the circumstances"[5] — would have felt he or she was "not at liberty to terminate the interrogation and leave."[6]

Axelburg's interrogation took place in an unlocked interview room at the sheriff's office, which Axelburg described as "real small, about . . . 10 x 10" feet. The interrogating officer was joined by a

[3] *Reinhardt v. State*, 263 Ga. 113, 114 (3) (a) (428 SE2d 333) (1993) (citation omitted), overruled in part on other grounds, *Vergara v. State*, 283 Ga. 175 (657 SE2d 863) (2008).

[4] *Bass v. State*, 282 Ga. App. 159, 160 (2) (637 SE2d 863) (2006).

[5] *Foster v. State*, 258 Ga. App. 601, 603 (2) (574 SE2d 843) (2002) (footnote omitted).

[6] *State v. Wintker*, 223 Ga. App. 65, 68 (476 SE2d 835) (1996) (citations omitted).

second officer who sat in a chair "right next to the door, or against the door." Axelburg believed that the second officer had a gun. The officer told Axelburg that the door was unlocked and that he was free to leave if at any point in the interview he did not like what was being asked. Axelburg responded that he understood. He did not attempt to leave during the interview.

After conducting a *Jackson-Denno* hearing on whether Axelburg's interrogation could be admitted into evidence, the trial court determined that under the totality of the circumstances Axelburg was not in custody for *Miranda* purposes because he was aware of the nature of the allegations against him, went to the sheriff's office voluntarily, was in an interview room, was told several times that he could leave the room, and was not physically restrained.

Numerous cases involving circumstances similar to those here support the court's conclusion that Axelburg was not in custody during the interrogation. In *Harmon v. State*,[7] a defendant was considered not in custody where he voluntarily rode with police to the station; he was not taken through the booking area; he was interviewed in an unlocked room; he was not physically restrained; and he did not ask to leave.[8] In *Bell v. State*,[9] a defendant was considered not in custody where he was initially placed in handcuffs but later released from them after voluntarily accompanying police to the station; he was told that he could leave at any time; he was allowed to move about the station in the company of police; and he agreed to remain at the station while police confirmed his statement.[10] In *Gabriel v. State*,[11] a defendant was considered not in custody where he went to the sheriff's office voluntarily; he was not handcuffed, arrested, or booked through the detention area; he was told he was not under arrest and was free to leave; and he offered to remain at the station after making his statement.[12] In *State v. Parks*,[13] a defendant was considered not in custody where he voluntarily followed police to the station in his own car; he was taken to an unlocked interview room; and he was told he was not under arrest and was free to leave.[14] And in *Sims v. State*,[15] a defendant was considered not in custody where he agreed to go to the police station;

---

[7] 281 Ga. App. 35 (635 SE2d 348) (2006).

[8] Id. at 36-37 (1).

[9] 280 Ga. 562 (629 SE2d 213) (2006).

[10] Id. at 563-564 (2).

[11] 280 Ga. 237 (626 SE2d 491) (2006).

[12] Id. at 237-238 (2).

[13] 273 Ga. App. 682 (616 SE2d 456) (2005).

[14] Id. at 683-684.

[15] 242 Ga. App. 460 (530 SE2d 212) (2000).

he was told he was free to leave; he was in an unlocked interview room; and he was not prevented from leaving after giving his interview.[16]

In contrast, the cases cited by Axelburg to support his argument that he was in custody before being given *Miranda* warnings involve significantly different circumstances in which the defendants' freedom to leave was impinged. In *State v. Pye*,[17] the state conceded that the defendant was not free to leave during questioning.[18] In *State v. Wintker*,[19] a teenaged defendant was deemed to have been in custody when she was involuntarily confined in the back of a locked police vehicle while her parents' car (which she had been driving) was subjected to a search to which she had not consented.[20] And in *Reinhardt v. State*,[21] a hospital patient was deemed to have been in custody during an interview when he was escorted by police to a hospital room and asked to remove his pants and shoes.[22]

The subjective views of Axelburg and the interrogating officer are not determinative of whether Axelburg was in custody.[23] Consequently, we find no merit in Axelburg's argument that he believed he was not free to leave, despite the officer's repeated indication and Axelburg's own acknowledgment to the contrary. We also find no merit in Axelburg's argument that the officer's clearly articulated belief that he was guilty rendered him in custody for *Miranda* purposes.[24] "Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue," but merely is a factor in determining "how a reasonable person would perceive his or her freedom to leave."[25] *Hadley v. State*,[26] cited by Axelburg, is distinguishable as it did not involve circumstances in which the interrogating officers told the defendant he was free to leave.

Under the facts of this case, the trial court did not err in finding that Axelburg was not in custody for *Miranda* purposes.

2. Axelburg argues that the trial court erred in admitting the videotape of his interview into evidence without requiring redaction of certain of the interrogating officer's comments. We agree, as

---

[16] Id. at 462-463 (2).
[17] 282 Ga. 796 (653 SE2d 450) (2007).
[18] Id. at 800.
[19] Supra.
[20] Id. at 69.
[21] Supra.
[22] Id. at 114-115 (3) (a).
[23] See *Hardin v. State*, 269 Ga. 1, 3 (2) (494 SE2d 647) (1998).
[24] See id.; *Hendrix v. State*, 230 Ga. App. 604, 605 (497 SE2d 236) (1997).
[25] *Stansbury v. California*, 511 U. S. 318, 325 (II) (114 SC 1526, 128 LE2d 293) (1994).
[26] 235 Ga. App. 737 (510 SE2d 569) (1998).

explained below, because we find that through his comments the officer cast himself as an expert on Axelburg's veracity and on the critical issue of whether Axelburg was sleepwalking when he accosted K. M., facts which were to be determined by the jury, to Axelburg's prejudice.

During the interrogation, the interrogating officer repeatedly expressed his belief that Axelburg could not have accosted K. M. in the manner Axelburg alleged, while sleepwalking. The officer twice stated that he used to sleepwalk and commented several times that he did not believe Axelburg's story about sleepwalking. When Axelburg denied inserting his finger into K. M., the officer immediately responded, "You're lying. . . . You're lying to me. And I just saw you do it. You were lying to me." He also remarked, "[T]ruth right now is not coming out. You know it as well as I do. I can sit here and watch your eyes." Later during the interrogation, the officer told Axelburg that he was a "certified forensic interviewer" and an expert at discerning whether a person was lying. He then said, "I know you're not telling me the truth. I know you're not. . . . What do you think I do for a living? This is what I do. I interview folks, and you're not telling me the truth." He continued, "[S]omething happened last night. And I don't believe it's a product of sleepwalking. . . . It's time for you to tell me the truth." Axelburg then admitted to waking up over K. M. with "[his] hand in her."

At trial, Axelburg objected to the jury hearing the portions of the interrogation containing the officer's comments about Axelburg's credibility and the believability of his sleepwalking defense, arguing that these comments were irrelevant and invaded the province of the jury. The court admitted the interrogation into evidence and published it to the jury without redaction, but gave the jurors limiting instructions that they were the sole arbiters of a witness's believability and of the ultimate issues in the case. We review the admission of this evidence for abuse of discretion.[27]

A trial witness may not give opinion testimony on ultimate matters within the jury's province, including the defendant's credibility.[28] The Supreme Court of Georgia, however, has viewed police comments during interrogations differently from sworn trial testimony.[29] In *Hames v. State*,[30] the Court distinguished interrogation comments from sworn testimony and stated that comments made in

---

[27] *Holland v. State*, 221 Ga. App. 821, 825 (3) (472 SE2d 711) (1996).

[28] *Fordham v. State*, 254 Ga. 59 (4) (325 SE2d 755) (1985); *Patterson v. State*, 278 Ga. App. 168, 171 (628 SE2d 618) (2006).

[29] See *Hames v. State*, 278 Ga. 182, 184 (3) (598 SE2d 459) (2004); *Rowe v. State*, 276 Ga. 800, 803 (2) (582 SE2d 119) (2003).

[30] Supra.

that case "appear[ed] to reflect only an aggressive interrogation technique designed to test the truthfulness of [the defendant's] denial of [the requisite intent]."[31] Similarly, in *Rowe v. State*,[32] the court held that "[w]hat [the defendant] characterizes as inadmissible statements by [the interrogator] regarding his theory of the case was nothing more than police questioning aimed at eliciting responses from a defendant in custody."[33] Other decisions of the Supreme Court of Georgia also emphasize the latitude given police interrogators in interviews that ultimately are admitted into evidence.[34] Likewise, courts in other jurisdictions have acknowledged the need for such interrogation techniques and under certain circumstances have allowed into evidence unredacted interview statements containing such techniques.[35]

Nevertheless, there are instances when a police interrogator's comments during an interview require redaction because they contain the officer's opinions and conclusions on an ultimate fact and impermissibly invade the jury's province. Thus, we held in *Holland v. State*[36] that on retrial the court had a duty to order redacted interrogator comments from a videotaped interview with the defendant.[37] The challenged comments in *Holland* included statements by the interrogator that the defendant's stepdaughter would not have "just dream[ed] . . . up" molestation allegations; that defendant's actions were an "abnormal" and "wrong" way of showing affection to the stepdaughter; that "the damage was done" four years earlier when the defendant first fondled his stepdaughter; that the defendant was lying in the interview; and that the defendant's bond with his stepdaughter was "going to the extreme."[38]

---

[31] Id. at 184.

[32] Supra.

[33] Id. at 803.

[34] See *DeYoung v. State*, 268 Ga. 780, 789 (8) (493 SE2d 157) (1997) (trial court did not err in denying motion to suppress statement obtained through police trickery or deceit); *Carroll v. State*, 261 Ga. 553, 554 (2) (408 SE2d 412) (1991) (trial court, which redacted other portions of interview, did not abuse discretion in not redacting interrogator's argumentative comments).

[35] See *Wurthmann v. Alaska*, 27 P3d 762, 768 (Alas. App. 2001); *Iowa v. Enderle*, 745 NW2d 438, 442-443 (III) (Iowa 2007); *Lanham v. Kentucky*, 171 SW3d 14, 34-36 (Ky. 2005); *South Dakota v. Zakaria*, 730 NW2d 140, 147-148 (S. Dak. 2007); *Washington v. Demery*, 30 P3d 1278, 1282-1285 (Wash. 2001). But see *Kansas v. Elnicki*, 105 P3d 1222, 1227-1229 (Kan. 2005) (interrogator comments that were not allowable as trial testimony could not be put before the jury through admission of unredacted pre-trial interview, even if their use was consistent with recommended interrogation technique); *Pennsylvania v. Kitchen*, 730 A2d 513, 521 (Pa. Super. 1999) (officer's interrogation statements regarding defendant's credibility must be redacted, because they are akin to prosecutor giving opinion at trial).

[36] Supra.

[37] Id. at 826.

[38] Id. at 825.

We hold that, like in *Holland*, the trial court had a duty to order redacted the officer's interrogation comments concerning Axelburg's truthfulness and the believability of his claim of sleepwalking. The officer stated in the interview that he also was a sleepwalker and that he was a forensic interviewing expert who could tell when an interview subject was lying to him. Upon the backdrop of this claimed expertise, the officer repeatedly accused Axelburg of lying about sleepwalking. By so doing, the officer expressed a professedly expert opinion on the defendant's sleepwalking defense and general credibility in a case in which the sleepwalking issue played a central role. The officer's statements impermissibly bolstered other testimony on this issue, which was the subject of significant dispute between the parties' expert witnesses at trial. Because the officer's opinion on this disputed question directly addressed Axelburg's defense, that he lacked the requisite intent to commit the offense, we do not find that allowing the jury to hear this opinion was harmless or that the limiting instruction mitigated this harm.[39]

The state argues that the trial court nevertheless properly allowed the unredacted interrogation to be admitted because the jury needed to hear the officer's comments concerning Axelburg's credibility and the believability of his sleepwalking claim so that the jury could understand Axelburg's responses and observe changes in Axelburg's statement during the course of the interrogation. We find no merit in this contention. Both Axelburg and the interrogating officer testified at trial about the interrogation, and Axelburg acknowledged in his trial testimony that he changed his statement during the interrogation.

3. Because the question is likely to recur on retrial, we address Axelburg's contention that the trial court erred in applying the rule of sequestration to prevent his expert witness from rebutting the state's expert or from sitting at counsel table to assist in cross-examining the state's expert.

The parties disputed the permissible application of the rule of sequestration at trial. The state first moved to sequester any witnesses from being present during any other witness's testimony, regardless of which party called the witness. Axelburg objected,

---

[39] See *Fordham*, supra at 60 (4) (trial court erred in allowing officer to present opinion on ultimate issue in case). But see *Shelton v. State*, 251 Ga. App. 34, 38 (3) (553 SE2d 358) (2001) (affirming conviction despite admission of unredacted videotape of interview containing interrogator's negative remarks on defendant's credibility, where overwhelming evidence of defendant's guilt made it highly probable that comments did not contribute to verdict); *Huckeba v. State*, 217 Ga. App. 472, 476-477 (5) (458 SE2d 131) (1995) (any error in admitting unredacted videotape of interrogation, which included interrogator's statement that he knew defendant had committed crime, was harmless in light of overwhelming evidence of defendant's guilt).

arguing that the rule of sequestration should apply only to prevent a witness from being present during the testimony of another witness for the same party. The court granted the state's motion, however, after which Axelburg also moved to sequester witnesses.

During the trial, the state asked that the court exempt from the sequestration order an expert witness that the state had reserved for rebuttal, so that the expert could assist the state in cross-examining Axelburg's expert witness. Axelburg objected, and the court declined to exempt the state's expert witness from sequestration.

After Axelburg's expert witness testified, the state asked the court to bar the expert from listening to its expert's testimony. Axelburg's counsel stated that he was dismissing the witness. The court allowed Axelburg's expert to remain in the courtroom but prohibited him from sitting at counsel table, and Axelburg moved for mistrial, which the court denied. Axelburg's expert witness remained in the courtroom and passed notes to counsel during the cross-examination of the state's expert witness.

The trial court had the discretion to apply the rule of sequestration to prohibit witnesses from being present during the testimony of any other witnesses.[40] And although the court, in its discretion, could exempt a witness from the rule of sequestration to assist a party in presenting the case, the court also could decline to grant such an exemption, even when an expert witness's presence could assist counsel at trial.[41]

Nothing in the record shows that the trial court abused its discretion in declining to exempt Axelburg's expert witness from the application of the rule of sequestration or in declining to allow the expert to sit at counsel table, especially in light of Axelburg's own trial tactic in opposing the state's earlier request that its expert be exempt from the rule of sequestration so as to assist counsel.[42] Our holding in *Greenway v. State*,[43] cited by Axelburg, is distinguishable. In *Greenway*, a defendant had to choose between having his sole witness, a DNA expert, give trial testimony or help him at trial.[44]

---

[40] See OCGA § 24-9-61 ("in all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other"); *Gray v. State*, 222 Ga. App. 626, 631 (2) (476 SE2d 12) (1996) ("the court in the exercise of its sound discretion as an inherent power to administer justice may apply the rule to all witnesses of all parties") (citations omitted).

[41] See *Pittman v. State*, 274 Ga. 260, 262-263 (3) (553 SE2d 616) (2001); *McNeil v. State*, 229 Ga. App. 149, 150 (493 SE2d 570) (1997); *Heath v. State*, 223 Ga. App. 680, 681-682 (2) (478 SE2d 462) (1996).

[42] See *Gill v. State*, 229 Ga. App. 462, 463 (1) (494 SE2d 259) (1997) (party cannot complain of ruling that his own trial tactics or conduct procured or aided in causing).

[43] 207 Ga. App. 511 (428 SE2d 415) (1993).

[44] See id. at 514 (4).

Here, in contrast, the trial court allowed Axelburg's expert first to testify and then to remain in the courtroom and assist counsel, albeit not in the manner desired by Axelburg. We find no error in the court's application of the rule of sequestration.

*Judgment reversed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED OCTOBER 31, 2008 —
RECONSIDERATION DENIED NOVEMBER 18, 2008 —

*Christopher J. McFadden*, for appellant.
*Fred A. Lane, Jr., District Attorney, William R. Pardue, Anthony Volkodav, Jr., Assistant District Attorneys*, for appellee.