**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**June 7, 2012**

# In the Court of Appeals of Georgia

A12A0713. BROWN v. THE STATE.

DILLARD, Judge.

Following trial, a jury convicted Sheneka Brown on one count of cruelty to children in the first degree based on her failure to seek medical treatment for her 22-month-old son after her boyfriend beat the child. Brown appeals, arguing that the trial court erred in denying her motions in limine to redact portions of a recording of her interview by police and to exclude evidence that she continued her relationship with her boyfriend after the incident. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the evidence shows that on July 31, 2009, Brown and her 22-month-old son, L. B., were staying

---

[1] *See, e.g., Goolsby v. State*, 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

with Brown's boyfriend, Quinton Smith, at a home that Smith shared with his mother. At some point that afternoon, Smith came into the bedroom where Brown had been sleeping and where L. B. was currently playing on the floor and told Brown that he had a headache and wanted to sleep. Subsequently, Smith told L. B. to be quiet, but when L. B. continued to play, Smith grabbed the child by his right arm, carried him over his shoulder into the kitchen, and began striking L. B. with a belt. Although she could hear Smith yelling at L. B. and striking him as the child cried, Brown did not intervene but instead asked Smith's mother to do so. A moment or so later, Brown could hear that L. B. had stopped crying. Assuming that L. B. was okay, Brown went back to sleep without checking on him.

A few hours later, Brown woke up, walked into the kitchen, and found that L. B. was there by himself, standing in a corner. Brown then took L. B. back into the bedroom where they both went back to sleep. But an hour or so later, Brown woke up to the sound of L. B. crying as if he was hurt. After Brown asked L. B. what was wrong, L. B. indicated that his arm hurt, and Brown noticed that he had welts on his body. However, instead of seeking medical attention for L. B., Brown gave him a bath and called a friend who often babysat L. B. to see if L. B. could stay at the friend's

2

house for a little while. When the friend agreed, Brown dropped L. B. off at the friend's home and then returned to Smith's residence.

A day and a half later, on August 2, 2009, Brown's friend called Brown and told her that L. B.'s arm was hurt and that he needed to go to the hospital. As a result, Brown took L. B. to a local hospital where he was examined by an emergency-room physician, who discovered that the child had significant bruises all over his back and legs. The physician also noticed that L. B. had a limited range of motion in his right shoulder and would cry in pain when that shoulder was touched. Although x-rays did not indicate that he had any broken bones, the physician believed that L. B. may have suffered soft tissue damage to his right shoulder. And based on the fact that L. B.'s injuries were consistent with him having suffered physical abuse, the physician contacted the police and the local Department of Family and Children Services ("DFCS").

Following a police interview, Brown was arrested and indicted on one count of cruelty to children in the first degree.[2] Prior to trial, Brown filed a motion in limine to redact portions of her recorded interview by police and a motion to exclude

---

[2] *See* OCGA § 16-5-70 (b) ("Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain.").

evidence that she had continued her relationship with her boyfriend. But after a hearing on the issues and the trial court's review of the interview recording, the court denied both motions.

During Brown's trial, the police officer who was called to the hospital testified regarding his investigation of the matter and regarding his interview of Brown, in which she admitted to being aware that Smith had beaten L. B. with a belt. The unredacted, digitally recorded video of that interview was entered into evidence and played for the jury. The State also called the DFCS caseworker as a witness, and the case worker testified that she had established a safety plan for Brown and L. B., which required that Brown have no further contact with Smith, but that Brown had refused to comply with that aspect of the plan. The emergency-room physician also testified at trial regarding L. B.'s injuries and that those injuries were consistent with him having suffered physical abuse. In addition, Smith's mother testified concerning Brown's reactions to Smith's abuse of L. B., and Brown's friend and her sister testified as to Brown's eventual decision to seek medical treatment for L. B. Finally, Brown testified in her own defense that although she heard Smith "whooping" L. B., she did not initially seek medical treatment for the child because she did not think that

4

he was seriously injured. Nevertheless, at the conclusion of her trial, the jury found Brown guilty. This appeal follows.

1. Brown contends that the trial court erred in denying her motion in limine to redact portions of the digital video recording of her interview by police. Specifically, she argues that the coarse and inflammatory language directed toward her by the interrogating office during the latter portion of the interview should have been redacted because it was irrelevant and prejudicial. We disagree.

At the outset, we note that "[i]n reviewing the denial of a motion in limine, this Court must construe the evidence most favorably to the upholding of the trial court's findings and judgment, and we cannot reverse a trial court's ruling absent an abuse of discretion."[3] In this matter, during the latter part of the recording of Brown's interview by the investigating police officer, the officer, who was obviously unsatisfied with Brown's responses, began raising his voice and using profanity. Specifically, the officer questioned Brown's abilities as a mother and, at one point, stated that he would likely find L. B.'s body in a dumpster one day if the child was ever reunited with Brown.

---

[3] *Hood v. State*, 291 Ga. App. 881, 882 (663 SE2d 297) (2008).

On appeal, Brown argues that the officer's inflammatory remarks constituted irrelevant opinions and were prejudicial. Once again, we disagree.

Our Supreme Court has acknowledged that police officers' comments during interrogations do not constitute sworn witness testimony.[4] Indeed, law-enforcement interrogations are, "by their very nature, attempts to determine the ultimate issue and the credibility of witnesses."[5] And comments made during the course of such an interview "and designed to elicit a response from a suspect do not amount to opinion testimony, even when a recording of the comments is admitted at trial."[6] Furthermore, such comments should only be excluded "if the probative value of the comments is outweighed by their tendency to unduly arouse the jury's emotions of prejudice, hostility or sympathy."[7]

And here, the inflammatory language about which Brown complains had probative value. Indeed, after the officer began employing this caustic method of

---

[4] *See Hames v. State*, 278 Ga. 182, 184 (3) (598 SE2d 459) (2004).

[5] *Collum v. State*, 281 Ga. 719, 723 (3) (642 SE2d 640) (2007); *see Hames*, 278 Ga. at 184 (3).

[6] *Roberts v. State*, 313 Ga. App. 849, 851 (2) (723 SE2d 73) (2012).

[7] *Id.* (punctuation omitted).

interrogation, Brown admitted that she had, in fact, heard Smith striking L. B. with a belt and also heard the child crying but did not intervene. As we have previously emphasized, "[a]ny evidence is relevant which logically tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant."[8] Moreover, the prejudicial effect of admitting these remarks seems minimal. At the conclusion of the interview, the investigating officer arrested Brown. Thus, it would hardly have been surprising to the jury that the officer believed Brown committed an act of cruelty to her child. Accordingly, the trial court did not abuse its discretion in admitting the unredacted recording of Brown's interview.[9]

2. Brown also maintains that the trial court erred in denying her motion in limine to exclude evidence that she continued her relationship with Smith even after Smith's abuse of L. B., arguing that such evidence impermissibly placed her character into evidence. We find this argument unavailing.

---

[8] *Ward v State*, 274 Ga. App. 511, 513 (3) (618 SE2d 154) (2005) (punctuation omitted).

[9] *See Roberts*, 313 Ga. App. at 851-52 (2) (holding that police officer's confrontational interview style, which included stating that he believed defendant raped the victim, was nevertheless more probative than prejudicial, and thus, trial court did not abuse its discretion in admitting unredacted interview of defendant).

It is well established that "Georgia law favors the admission of any relevant evidence, no matter how slight its probative value, and even evidence of questionable or doubtful relevancy or competency should be admitted and its weight left to the jurors."[10] Furthermore, evidence which is relevant to an issue in a case "is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue."[11] And here, the DFCS caseworker who investigated this matter testified that Brown chose to continue living with Smith—the very person who had abused her child—even though doing so defied the safety plan that the caseworker established and, therefore, hurt Brown's chances of being reunited with L. B. Although Brown argues that this evidence was improperly admitted, the caseworker's testimony was relevant to show the State's theory as to Brown's state of mind close in time to the incident of abuse—that is, that Brown valued her relationship with Smith more than she valued the safety and well-being of her own child. Accordingly, the trial court did

---

[10] *Ward*, 274 Ga. App. at 513-14 (3).

[11] *Butler v. State*, 266 Ga. 537, 538 (1) (468 SE2d 369) (1996) (punctuation omitted).

not abuse its discretion in denying Brown's motion in limine to exclude such evidence.[12]

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*

---

[12] *See id.* (holding that statements by witness that defendant had been considering robbery were relevant to show defendant's state of mind close in time to charged crimes and were therefore admissible despite putting defendant's character in issue).