S12A2049. BUTLER v. THE STATE.
(738 SE2d 74)

BLACKWELL, Justice.

Roddicus Butler was tried by a Decatur County jury and convicted of the murder of Jamira Washington, a two-year-old child. Following the denial of his motion for new trial, Butler appeals, contending that the evidence is insufficient to sustain his conviction, that the trial court erred when it denied his motion to suppress certain statements that he gave to law enforcement, and that he was denied the effective assistance of counsel at trial. Upon our review of the briefs and record, we find no error, and we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that Butler lived with Doretha Washington and her three young children — one of whom was Jamira — in a house in Bainbridge.[2] On the morning of November 19, 2003, Doretha went to work and left the children in the care of Butler. At that time, Jamira had no apparent injuries and seemed to be in no distress. In the early afternoon, emergency personnel responded to a location down the road from the house, where they found Jamira, who was unresponsive, and Butler. Jamira was taken to a local hospital, where she was pronounced dead.

Later that afternoon, James Earl Spooner, Jr., an investigator with the Bainbridge Police Department, interviewed Butler at the house Butler shared with Doretha and the children. In that interview, Butler explained that he had slept until early afternoon, that he

---

[1] The events that form the basis for the conviction occurred on November 19, 2003. Butler was indicted on February 3, 2004 and charged with cruelty to children in the first degree and felony murder predicated on cruelty to children in the first degree. His trial commenced on May 4, 2004, and the jury returned its verdict on the same day, finding Butler guilty on both counts. The trial court merged the cruelty to children into the felony murder, see *Sears v. State*, 292 Ga. 64, 73 (6) (734 SE2d 345) (2012), and Butler was sentenced to imprisonment for life. Butler filed a motion for new trial on June 2, 2004, and he amended it on March 14, 2012. The trial court denied the motion for new trial as amended on July 19, 2012. Butler timely filed a notice of appeal to the Court of Appeals on July 24, 2012, and the Court of Appeals properly transferred the case to this Court. See *Neal v. State*, 290 Ga. 563, 569-572 (722 SE2d 765) (2012) (Hunstein, C. J., concurring). The case was docketed in this Court for the September 2012 term and submitted for decision on the briefs.

[2] Butler apparently is the father of one of the children, but not Jamira.

awoke and found Jamira unresponsive, that he attempted cardiopulmonary resuscitation (CPR), and that he then carried Jamira down the road in search of help.[3] Oddly enough, Butler added that he had cleaned the kitchen after finding Jamira unresponsive, but before setting out in search of help.

The medical examiner subsequently determined that Jamira had died as a result of blunt-force trauma to her abdomen, and he ruled out the possibility that Jamira might have choked or died as a result of improperly administered CPR measures. Besides the abdominal trauma, the medical examiner also noted that Jamira had suffered a number of other significant injuries, including a puncture wound to the back of her head, a fractured arm, bruises on her back, defensive wounds on her hands, and internal head injuries consistent with blunt-force trauma to the head. In light of the findings of the medical examiner, Investigator Spooner arranged to interview Butler again, this time at the police station.

At the second interview, Butler stuck at first to his original story.[4] But when Investigator Spooner disputed that story and confronted Butler with the findings of the medical examiner, Butler asked to take a break, a request to which Investigator Spooner agreed. Following the break, Butler admitted — in both oral and written statements — that he struck Jamira in the abdomen "three or four times," ostensibly as discipline for her having soiled her pants. Butler also admitted that he inflicted other injuries upon Jamira and might have caused the injuries to her head, arm, and hands. At trial, Butler testified that he had only intended to spank Jamira and that the fatal blows to her abdomen were accidental.

On appeal, Butler contends that the State failed to prove beyond a reasonable doubt that he acted with malice, which is required, of course, to sustain a conviction for felony murder predicated on cruelty to children in the first degree. See OCGA § 16-5-70 (b) ("Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."). In support of this contention, Butler points to his own testimony at trial that he was merely

---

[3] As Butler carried Jamira down the road, he encountered his mother and another witness. He told his mother that Jamira was choking, and she called for emergency assistance. The other witness administered CPR measures until emergency personnel arrived, noting as she did that Jamira had several large bruises on her abdomen.

[4] At the request of Investigator Spooner, Butler also demonstrated his CPR technique on a mannequin. Investigator Spooner – who once had been certified as a CPR instructor and had been employed previously with emergency medical services – noted that Butler did not apply significant force to the mannequin as he demonstrated his CPR technique.

attempting to discipline Jamira for soiling her pants and that the blows to her abdomen were accidental. Butler reasons that the State failed to rebut his testimony and that an effort to discipline a child does not show malice. We are unpersuaded.

It is true that a parent — or someone acting in loco parentis — may apply some force to a child as a disciplinary measure without violating the law. But the application of such force must be reasonable, and if it is not, it may go beyond mere discipline and instead amount to malicious infliction of "cruel or excessive physical or mental pain." *Tabb v. State*, 313 Ga. App. 852, 857 (2) (723 SE2d 295) (2012) ("[A]pplied force is legally justified [to discipline a child] only when a parent's conduct in disciplining a child is reasonable.") (citation and punctuation omitted). See also OCGA § 16-3-20 (3) ("The defense of justification can be claimed . . . [w]hen the person's conduct is the reasonable discipline of a minor by his parent or a person in loco parentis[.]"). Here, the evidence concerning the severity and scope of the injuries that Jamira sustained would permit an inference that whoever struck Jamira did so maliciously and that the injuries were not the result of reasonable disciplinary measures. Moreover, Butler offered inconsistent accounts of the events that led to Jamira's death, suggesting a consciousness of guilt, and he eventually admitted that he was responsible for the injuries that Jamira sustained only after he was confronted by Investigator Spooner with the findings of the medical examiner. Although Butler testified at trial that he only intended to discipline Jamira, it is for the jury, not appellate judges, to "resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." *Nicely v. State*, 291 Ga. 788, 790 (1) (733 SE2d 715) (2012) (citation and punctuation omitted). See also *Sears v. State*, 290 Ga. 1, 2 (2) (717 SE2d 453) (2011). The evidence in this case was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Butler striking Jamira did not amount to reasonable discipline of the child, that he acted with the requisite malice, and that he was guilty of felony murder. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). See also *Nicely*, 291 Ga. at 789-790 (1); *Bowie v. State*, 286 Ga. 880, 881 (1) (692 SE2d 371) (2010); *Bostic v. State*, 284 Ga. 864, 865 (1) (672 SE2d 630) (2009); *Smith v. State*, 283 Ga. 237, 238 (1) (657 SE2d 523) (2008); *Tabb*, 313 Ga. App. at 857 (2).

2. We next consider the contention that the trial court erred when it denied a motion to suppress the oral and written statements that Butler gave to Investigator Spooner at the second interview. The record shows that Investigator Spooner attempted to make an audio and video recording of the interview, but the recording stopped before

the interview was complete. Investigator Spooner realized at some point that the recording had stopped, and at that point, he replaced the tape on which the interview was being recorded and attempted to restart the recording. Images of Butler writing out a statement appear on the second tape, but the audio recording equipment apparently malfunctioned and failed to record the sounds of the remainder of the interview on the second tape. Evidently, neither tape recorded Butler waiving his *Miranda*[5] rights.

At a *Jackson-Denno*[6] hearing, Investigator Spooner testified about the problems with the recording, as well as his recollection of the interview, including that he advised Butler of his *Miranda* rights, that Butler appeared to understand his rights, and that Butler waived his rights and voluntarily agreed to proceed with the interview. The State also offered a written waiver form, signed and initialed by Butler, and the second tape of the interview as additional proof that Butler gave his statements freely and voluntarily. In light of this evidence, and notwithstanding the absence of a complete recording of the interview, the trial court found that appropriate *Miranda* warnings were given in connection with the interview, that Butler fully understood and waived his rights, that Butler gave his statements without hope of benefit or reward, and that those statements were not a product of duress, compulsion, fear, threat, or undue influence. As we have explained before,

> [i]n ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal.

*Humphreys v. State*, 287 Ga. 63, 73 (6) (694 SE2d 316) (2010) (citation omitted).

In this case, we cannot say that the trial court clearly erred when it credited the testimony of Investigator Spooner, and we cannot say that it erred when it concluded that the statements given by Butler

---

[5] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).
[6] See *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

were voluntary and, therefore, admissible.[7] Although recording an interview of a suspect may be the better practice, see *Humphreys*, 287 Ga. at 74 (6), it is not our job to grade the work of law enforcement, and we have held before that the law does not require that the voluntariness of a statement be proved by a recording of the interview. See, e.g., *Monsalve v. State*, 271 Ga. 523, 524-525 (2) (519 SE2d 915) (1999) (affirming admission of confession, notwithstanding that video recording equipment malfunctioned and failed to record waiver of rights); *Daniel v. State*, 268 Ga. 9, 10 (2) (485 SE2d 734) (1997) ("[T]he State was not required to corroborate the officer's testimony by proffering a videotape of the session at which the statement was made. The trial court was authorized to base its ruling on the testimony and credibility of the officer himself.") (citation omitted). See also 2 LaFave, Israel, King & Kerr, Criminal Procedure § 6.8 (c) (3d ed.) (noting that most jurisdictions "have not imposed any recording requirement on any part of the interrogation process") (footnote omitted). The testimony of Investigator Spooner was sufficient to show that Butler gave his statements voluntarily, and the trial court did not err when it denied the motion to suppress the statements given at the second interview. See *Humphreys*, 287 Ga. at 74 (6).

3. Last, we consider the contention that Butler was denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance, Butler must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). To show that the performance of his lawyer was deficient, Butler must prove that she performed her duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SC 2574, 91 LE2d 305) (1986). And to show that he was prejudiced by the performance of his lawyer, Butler must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

---

[7] In any event, when a question is raised on appeal about the voluntariness of a statement, the appellate court is not limited to the evidence adduced at a *Jackson-Denno* hearing, and it instead "may look to all the evidence of record in determining the admissibility of a confession." *Haynes v. State*, 269 Ga. 181, 184 (4) (496 SE2d 721) (1998) (citation omitted). See also *Stapleton v. State*, 235 Ga. 513, 516 (1) (220 SE2d 269) (1975). At trial, Butler testified that he never was promised anything or threatened in connection with his second interview, that he was allowed to take a break from the interview, that he gave his statements freely and voluntarily, and that the written statement offered by the State at trial was, in fact, in his own handwriting. "[T]he correctness of the [trial] court's ruling [on the voluntariness of the statements] is borne out by [Butler's] own [testimony] during trial." *Haynes*, 269 Ga. at 184 (4).

probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). See also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SC 1495, 146 LE2d 389) (2000). This burden, though not impossible to carry, is a heavy one. See *Kimmelman*, 477 U. S. at 382 (II) (C). We conclude that Butler has failed to carry his burden.[8]

(a) Butler first claims that his trial lawyer was ineffective because she failed to object when Investigator Spooner testified that, after Butler stuck to his original story at the outset of the second interview, Investigator Spooner told Butler: "[Y]ou and I both know this is not exactly what happened[.] You are holding something out, apparently you got mad and lost your temper or whatever." Citing *Axelburg v. State*, 294 Ga. App. 612, 617-618 (2) (669 SE2d 439) (2008) and *Holland v. State*, 221 Ga. App. 821, 825 (3) (472 SE2d 711) (1996), Butler argues that Investigator Spooner should not have been permitted to offer "opinion testimony" that reflected his assessment of Butler's original story, testimony that, Butler contends, improperly touched upon the ultimate issue. It is true enough that, generally speaking, "[a] trial witness may not give opinion testimony on ultimate matters within the jury's province, including the defendant's credibility."[9] *Axelburg*, 294 Ga. App. at 616 (2) (footnote omitted). But Investigator Spooner was not offering opinion testimony in this instance; he was offering fact testimony about a statement that was,

---

[8] Figuratively speaking, the hill that must be climbed to make out a claim of ineffective assistance is almost always high and steep. In this case, however, it is especially high and steep because Butler failed to put on any evidence in support of his claim – including any testimony from his trial lawyer – at the hearing on his motion for new trial. Instead, Butler agreed to submit his motion to the trial court on the moving papers and without presenting any evidence beyond the trial record. Inasmuch as Butler "waived a hearing, there is no testimony of trial counsel regarding the decisions [s]he made at trial. In the absence of evidence to the contrary, counsel's decisions are presumed to be strategic . . . ." *Mitchell v. State*, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012) (citation and punctuation omitted). And because Butler cannot overcome the presumption that his lawyer had strategic reasons for doing what she did, and for failing to do what she did not, Butler must show that the presumed strategy was so unsound that no reasonable lawyer would have adopted it to show deficient performance. See *Strickland*, 466 U. S. at 689 (III) (A) (noting that "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (citation and punctuation omitted). That is an unusually heavy burden to carry. As we have observed before, "[i]t is extremely difficult to overcome the presumption of reasonable professional assistance where counsel does not testify." *Maxwell v. State*, 290 Ga. 574, 575 (2) (722 SE2d 763) (2012) (citations and punctuation omitted). Even so, we will review each instance in which Butler contends that his trial lawyer was ineffective to determine whether the record reveals deficient performance and prejudice. See id.

[9] We do not comment here on the admissibility of opinion testimony under OCGA § 24-7-701 et seq., which were enacted as a part of our new Evidence Code. Because this case was tried before January 1, 2013, the new Evidence Code does not apply. See Ga. L. 2011, pp. 99, 214, § 101.

in fact, made in the second interview, albeit a statement that itself contained an opinion.[10] As we have explained before, "law enforcement interrogations are, by their very nature, attempts to determine the ultimate issue and the credibility of witnesses." *Collum v. State*, 281 Ga. 719, 723 (3) (642 SE2d 640) (2007). "Comments made in such an interview and designed to elicit a response from a suspect do not amount to opinion testimony, even when [testimony reflecting] the comments is admitted at trial." *Roberts v. State*, 313 Ga. App. 849, 851 (2) (723 SE2d 73) (2012) (citations omitted). See also *Brown v. State*, 316 Ga. App. 137, 139 (1) (728 SE2d 778) (2012). The question, therefore, is not whether Butler's lawyer should have objected to Investigator Spooner offering opinion testimony, but instead whether she should have objected that the testimony was without probative value or was too prejudicial to be admitted.

Like any other evidence, testimony reflecting comments made by an officer in the course of an interview ought not be admitted if the probative value of the testimony is substantially outweighed by its tendency to unduly arouse emotions of prejudice, hostility, or sympathy.[11] See *Brown*, 316 Ga. App. at 139-140 (1); *Roberts*, 313 Ga. App. at 851 (2). Here, Butler abandoned his original story in the course of the second interview and eventually admitted to having struck Jamira. The circumstances in which Butler changed his story were relevant to a proper consideration of his credibility and an assessment of his admissions, and the comments made by Investigator Spooner during the second interview were among those circumstances. Indeed, the comments about which Butler complains reflected "an aggressive interrogation technique designed to test the truthfulness of [Butler's original story]," *Hames v. State*, 278 Ga. 182, 184 (3) (598 SE2d 459) (2004) (citation omitted), and those comments were followed shortly by an admission that Butler had hit Jamira in the abdomen three or four times. As such, the testimony by Investigator Spooner about those comments had some probative value. See *Brown*, 316 Ga. App. at 140 (1).

The probative value of this testimony was not substantially outweighed by its prejudicial effect. It hardly would have surprised anyone observing the trial to learn that Investigator Spooner was not satisfied with the original story that Butler had offered and believed

---

[10] Whether a statement actually was made in an interview is a question of fact, not opinion. What happened, happened.

[11] Under the new Evidence Code, see note 9, supra, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403.

instead that Butler was not telling the whole truth about what had happened to Jamira, and any rational juror could have surmised as much without being told explicitly.[12] See *Brown*, 316 Ga. App. at 140 (1); *Roberts*, 313 Ga. App. at 852 (2). Such comments upon the patently obvious generally pose little, if any, danger of prejudice, and they "are not, we think, comparable to the specific and detailed commentary . . . found inadmissible in *Axelburg* and *Holland*."[13] *Roberts*, 313 Ga. App. at 852 (2) (citations and footnote omitted). For these reasons, if objection had been made to the testimony of Investigator Spooner, the trial court properly would have overruled the objection. See *Brown*, 316 Ga. App. at 140 (1); *Roberts*, 313 Ga. App. at 852 (2). Accordingly, a lawyer might reasonably have declined to make such a meritless objection, and Butler has failed in any event to show — especially in light of the minimal prejudicial effect of the testimony at issue — a reasonable probability that the outcome of the trial would have been different if his lawyer had objected.

(b) Butler also asserts that his trial lawyer was ineffective because she failed to object on two other occasions on which witnesses expressed opinions, he says, on the ultimate issue. In one instance, the prosecuting attorney asked Investigator Spooner, based on his investigation, "who killed Jamira," and Investigator Spooner responded, "Roddicus Butler." In the other instance, the medical examiner testified that he "delineate[d] the manner of [Jamira's] death as a homicide." "Generally, witnesses are prohibited from expressing opinions on an ultimate issue where jurors can come to their own conclusion from factors within their understanding." *Sharpe v. State*, 291 Ga. 148, 149-150 (2) (728 SE2d 217) (2012) (citation omitted). In this case, however, the identity of the person who caused the death of Jamira and that her death was a homicide were not disputed. See *Mangrum v. State*, 285 Ga. 676, 679 (4) (681 SE2d 130) (2009); *Berry v. State*, 282 Ga. 376, 382-383 (6) (651 SE2d 1) (2007) ("homicide means 'the killing of any human being' ") (citation and punctuation

---

[12] If Investigator Spooner had been satisfied with the original account, there obviously would have been no second interview, and Investigator Spooner would not have continued to challenge and question that account after Butler repeated it. Moreover, the jury knew that Investigator Spooner arrested Butler at the conclusion of the second interview, a circumstance that signaled quite clearly what Investigator Spooner thought had happened to Jamira.

[13] In *Axelburg*, the Court of Appeals held that the trial court ought not have admitted interrogation comments in which an officer claimed that he had expertise concerning sleepwalking, held himself out as an expert in forensic interview techniques, said that he knew whenever a suspect was lying, and accused the defendant of lying about his sleepwalking. 294 Ga. App. at 618 (2). In *Holland*, the Court of Appeals held that the trial court should not have admitted interrogation comments in which a detective explained at length that the interactions between the defendant and his daughter were "inappropriate," "abnormal," "wrong," and "extreme." 221 Ga. App. at 825 (3).

omitted). Butler instead defended the case on the grounds that his conduct was justified as reasonable discipline of Jamira and that his striking her in the abdomen was an accident. See OCGA §§ 16-2-2, 16-3-20 (3). Accordingly, the ultimate issues for the jury were whether Butler striking Jamira was justified and whether the fatal blows were landed accidentally. See *Cade v. State*, 289 Ga. 805, 810 (5) (716 SE2d 196) (2011); *Mangrum*, 285 Ga. at 679 (4); *Berry*, 282 Ga. at 383 (6) (defense of justification or provocation was ultimate issue); *Willis v. State*, 274 Ga. 699, 701 (3) (558 SE2d 393) (2002) (defense of accident was ultimate issue). Because the testimony in question did not actually go to the ultimate issue, Butler has not shown that the failure of his lawyer to object to the testimony of which he complains could not have been sound trial strategy, see *Berry*, 282 Ga. at 383 (6), nor has he shown a reasonable probability that the outcome of the trial would have been different if Butler's lawyer had objected.[14] See id.; *Columbus v. State*, 270 Ga. 658, 664 (2) (g) (513 SE2d 498) (1999).

(c) Butler further contends that his trial lawyer was ineffective when she failed to object to opinion testimony by Investigator Spooner about the proper administration of CPR measures,[15] noting that the prosecuting attorney never formally tendered Spooner as an expert. Spooner testified, however, that he had previously worked for ten years in emergency medical services, that he formerly had been certified as a CPR instructor, and that he had taught CPR techniques in a number of locations. He was

> questioned as [an] expert[ ] by the State, and thus [was] either tacitly or impliedly accepted as such by the trial court. It follows that any objection raised by [Butler's lawyer] to such questioning would have been futile, and therefore cannot serve as the basis for a claim of ineffective assistance.

*Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004). Moreover, even assuming that the failure of Butler's lawyer to object amounts to deficient performance, because the same evidence was more fully presented to the jury through the testimony of the medical examiner, Butler "has not carried his burden of establishing the

---

[14] We note as well that any rational juror would have surmised that Investigator Spooner believed that Butler had killed Jamira, even without being told explicitly. Such a comment upon the patently obvious carries little danger of prejudice. See Division 3 (a), supra.

[15] In particular, Spooner testified that, because of the location of the bruises on Jamira and the necessity for a heartbeat in order for a person to receive bruises, it did not occur to him that Jamira's injuries would have been caused by CPR.

prejudice prong of ineffective assistance of counsel." *Bales v. State*, 277 Ga. 713, 715 (2) (594 SE2d 644) (2004).

(d) Finally, Butler complains that his lawyer failed to object to the prosecuting attorney asking leading questions of the witnesses for the State, but Butler cites only six leading questions asked in the direct and redirect examinations of the medical examiner and two leading questions during the direct examination of Investigator Spooner. Having reviewed each leading question in its context, we conclude that Butler has not met his burden to rebut the presumption that the failure to object to the leading questions might have been sound trial strategy. As a result, he has failed to show deficient performance. *Mitchell*, 290 Ga. at 492 (4) (a). Moreover, Butler has not proved that he suffered any prejudice as the result of his trial lawyer's failure to object to any leading questions. See *Butts v. State*, 273 Ga. 760, 768 (17) (546 SE2d 472) (2001).

(e) In conclusion,

[t]he absence of evidence from which a finding of trial counsel's deficient performance could be made, coupled with [Butler's] mere speculation concerning the prejudice purportedly wrought by the unproven deficient performance, leads us to conclude the trial court did not err when it determined that [Butler] did not carry his burden of proving ineffective assistance of counsel . . . .

*Jones v. State*, 289 Ga. 111, 114 (2) (a) (709 SE2d 773) (2011) (citations omitted).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 4, 2013.

*Jami L. Brice, Billy M. Grantham*, for appellant.

*Joseph K. Mulholland, District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kenneth W. Mishoe, Assistant Attorney General*, for appellee.