### A10A2125. DURRENCE v. THE STATE.
(706 SE2d 180)

MIKELL, Judge.

James H. Durrence was convicted of three counts of child molestation based on acts committed against his girlfriend's seven-

---

year-old daughter, H. M. He was sentenced as a recidivist to twenty years on each count, to run concurrently, with eight years to serve and the rest on probation. On appeal, Durrence contends that the trial court erred in admitting his statement into evidence and in granting the state's motion in limine to exclude evidence of a report of molestation made by A. P., H. M.'s half-sister. Discerning no error, we affirm.

1. Durrence argues that the trial court erred in ruling that his pre-arrest statement was noncustodial, freely and voluntarily given, and admissible in evidence although he was not given *Miranda*[1] warnings.

> A person is considered to be in custody and *Miranda* warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary. Thus, the relative inquiry is how a reasonable person in [Durrence]'s position would perceive his situation.[2]

Whether a person is in custody for *Miranda* purposes is a mixed question of law and fact,[3] and the trial court's factual findings on this issue will not be disturbed unless they are clearly erroneous.[4] In the case at bar, the evidence supports the trial court's ruling. GBI agent Cyrus Purdiman testified at the *Jackson-Denno*[5] hearing that the DFCS worker assigned to H. M.'s case contacted Durrence to come in to Evans County DFCS's office on March 14, 2006. The DFCS worker notified Purdiman, who arranged to be there to interview Durrence. Purdiman testified that before the interview began, he introduced himself to Durrence and stated that he worked as a special agent for the GBI. Purdiman told Durrence that he was not under arrest, was free to go, and did not have to make a statement. Purdiman explained that he wanted to discuss the allegations against Durrence. Durrence became emotional, even tearful, and he

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[2] (Citations and punctuation omitted.) *State v. Folsom*, 285 Ga. 11, 12-13 (1) (673 SE2d 210) (2009); accord *McAllister v. State*, 270 Ga. 224, 227-228 (1) (507 SE2d 448) (1998).

[3] *Axelburg v. State*, 294 Ga. App. 612, 613 (1) (669 SE2d 439) (2008).

[4] *Hendrix v. State*, 230 Ga. App. 604, 605 (1) (497 SE2d 236) (1997). See also *Humphreys v. State*, 287 Ga. 63, 73 (6) (694 SE2d 316) (2010) ("Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal") (citation omitted).

[5] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

made disclosures regarding his conduct with H. M. Purdiman wrote down Durrence's disclosures and gave him an opportunity to review his statement. Durrence signed each page and initialed corrections that were made. Purdiman signed the statement as well. Based on Durrence's admissions that he touched H. M. inappropriately and exposed himself to her, Purdiman walked him over to the sheriff's office and placed him under arrest.

The statement was read into evidence for the purpose of the hearing. In the statement, Durrence admitted that he touched H. M. on her inner thigh near her vagina while she was sitting in his lap; that H. M. pushed his hand away from her private area; that twice on the same day in February 2006, Durrence pulled his pants away from his body so that H. M. saw his penis; and that on that same night, after H. M. went to bed, he went into her bedroom, pulled his penis out of his pants, held it in his hand, and pulled the skin back from the head of his penis. Durrence further stated that his penis was not erect when he exposed it to H. M.

According to Purdiman, the interview lasted between ninety minutes and two hours. Purdiman testified that he did not threaten Durrence in any manner; that the interview took place in a regular office at DFCS; that no other law enforcement officers were present; and that Durrence did not appear to be under the influence.

The trial court credited Purdiman's testimony and found that Durrence was not in custody at the time he made his statement, so *Miranda* warnings were not required. The court also found that "the statement was freely and voluntarily given without the slightest hope of benefit or fear of injury." Durrence contends that the trial court's ruling is erroneous because he was lured into DFCS by a social worker, rendering his "surprise" interview by a GBI agent custodial. We disagree.

"[A] suspect is not entitled to *Miranda* warnings, as a matter of right, unless he has been taken into custody or has been deprived of freedom of action in another significant way."[6] The standard is an objective one. We consider whether, under the totality of the circumstances, a reasonable person would have felt that he was "not at liberty to terminate the interrogation and leave."[7] Applying these guidelines, we find no error in the trial court's ruling that Durrence was not in custody for *Miranda* purposes when he made the statement. Durrence was interviewed in a DFCS office, and he came there voluntarily. Although he was not expecting Purdiman, the agent introduced himself as a GBI agent and stated that he wanted

---

[6] (Citations omitted.) *Hendrix*, supra.

[7] (Punctuation and footnote omitted.) *Axelburg*, supra.

to discuss the allegations against Durrence. Purdiman told Durrence that he was not under arrest, was free to leave, and did not have to make a statement. There is no evidence that he was physically restrained or otherwise prevented from leaving the DFCS office until after he admitted to criminal conduct. Accordingly, the evidence authorized a finding that a reasonable person in Durrence's position would have believed that he was free to terminate the interview and leave.[8]

2. Durrence argues that the trial court erred in granting the state's motion in limine to preclude the defense from introducing evidence of a molestation report made by A. P., H. M.'s half-sister. The state argued that the report was hearsay and that it was irrelevant because A. P. was neither a victim nor a witness in this case. "The admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion."[9] We discern no clear abuse of discretion in the case at bar.

The motion states that during a telephone call, an Evans County DFCS worker learned that A. P. had made an unsubstantiated report of abuse in South Carolina and that the case had been closed. According to the motion, the call was reflected in Evans County DFCS's records, which were produced during discovery. At the hearing on the motion, Durrence argued that A. P. had made three unfounded allegations in South Carolina, which he intended to prove by cross-examining A. P.'s mother, Janice M., concerning whether she had "been involved with [her] other daughter, A. P., with regard to making false sexual allegations against individuals." Durrence stated that his defense was that Janice M. had caused H. M. to fabricate the allegations because Janice M. was jealous, vindictive, and suspected that Durrence was paying attention to another woman. The court permitted Durrence to question Janice M. at the hearing, and she testified that A. P. had once reported that a male relative had touched her in a way that made her uncomfortable. Janice M. testified that she was not involved in making the report. Durrence presented no evidence. Finding no evidence that Janice M. encouraged A. P. to make an unfounded allegation of molestation, the trial court granted the state's motion in limine.

During trial, Janice M. was called as a defense witness; she did not testify for the state. Durrence questioned her extensively con-

---

[8] Id.; accord *Sosniak v. State*, 287 Ga. 279, 281-282 (1) (A) (1) (695 SE2d 604) (2010).

[9] (Punctuation and footnote omitted.) *Cantu v. State*, 304 Ga. App. 655, 657 (1) (697 SE2d 310) (2010).

cerning her volatile relationship with Durrence, both before and after he molested H. M. Durrence also elicited testimony that Janice M. waited ten days from the time H. M. told her about what happened until she called DFCS.

On appeal, Durrence contends that the trial court's grant of the state's motion in limine violated his rights to a thorough and sifting cross-examination and to confront witnesses under the Sixth Amendment and *Crawford v. Washington*.[10] At the outset, we note that the DFCS records produced during discovery have not been included in the appellate record. Consequently, we have no means of properly evaluating the propriety of the trial court's ruling. "The burden is on the party alleging error to show it affirmatively by the record. This court cannot determine the propriety of the trial court's ruling without a proffer of the excluded evidence or testimony."[11]

Even if the record had been properly perfected, we would find Durrence's arguments meritless. He cites the rule that "[e]very party has a right to a thorough and sifting cross-examination of witnesses called against him,"[12] which "includes the right to impeach the witness by revealing possible biases or prejudices concerning issues in the case."[13] But the state did not call Janice M. as a witness, and contrary to Durrence's contention, "[t]here is no requirement that the [s]tate call more witnesses than it needs to present its case."[14] In any event, pursuant to OCGA § 24-9-81, "[a]ny party, including the party calling the witness, may attack the credibility of a witness." The statute gives the defendant the right to attempt to impeach his own witness.[15] Here, however, Durrence proffered no proper impeachment evidence,[16] so he cannot complain that the trial court abused its discretion in granting the state's motion in limine.

Finally, *Crawford* is not applicable here. In *Crawford*, the United States Supreme Court ruled that the state's admission of a testimonial statement against the accused, who had no opportunity to

---

[10] 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

[11] (Citation and punctuation omitted.) *Bearfield v. State*, 305 Ga. App. 37, 41 (2) (699 SE2d 363) (2010).

[12] (Citations, punctuation and footnote omitted.) *Courrier v. State*, 270 Ga. App. 622, 623 (1) (a) (607 SE2d 221) (2004).

[13] (Footnote omitted.) *Baird v. State*, 260 Ga. App. 661, 665 (3) (580 SE2d 650) (2003).

[14] (Citation and punctuation omitted.) *Leatherwood v. State*, 212 Ga. App. 342, 343 (3) (441 SE2d 813) (1994).

[15] See *Warner v. State*, 281 Ga. 763, 766 (3) (642 SE2d 821) (2007) (state may attempt to impeach its own witness).

[16] Compare *Leatherwood*, supra at 344 (3) ("Hearsay is admissible to impeach a witness by showing that a prior contradictory statement has been made") (citation omitted).

cross-examine the witness, violated the Sixth Amendment.[17] There was no *Crawford* issue in this case because the trial court's ruling did not involve the admission of any testimonial statement made by Janice M. against Durrence.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 11, 2011.

*John S. Wetzler*, for appellant.

*Tom Durden, District Attorney, Sandra Dutton, Assistant District Attorney*, for appellee.

---

[17] Supra, 541 U. S. at 68-69 (V) (C). See *Lindsey v. State*, 282 Ga. 447, 452 (4) (651 SE2d 66) (2007).