**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**April 22, 2016**

# In the Court of Appeals of Georgia

A16A0573. MARLOW v. THE STATE.

ELLINGTON, Presiding Judge.

A Hall County jury found Larry Marlow guilty of rape, OCGA § 16-6-1 (a) (1), and false imprisonment, OCGA § 16-5-41 (a).[1] Marlow appeals from the denial of his motion for a new trial, contending that the trial court erred in charging the jury and that the prosecutor made an improper closing argument. Finding no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows the following. In July 2013, the victim, a recovering drug addict and homeless mother of

---

[1] The State also indicted Marlow for two counts of aggravated assault by pointing a handgun, but the jury acquitted him of those offenses.

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

three young children, accepted Marlow's invitation to move into his home. The victim began working for Marlow, assisting him with an income tax preparation business that he ran from the home. For a while, the victim's relationship with Marlow was amicable, and she began to develop romantic feelings for him.

On August 3, 2013, the victim's mother and brother stopped by Marlow's home to drop off some diapers for the victim's youngest child. The victim was standing outside talking to her mother and brother, who were still in the car, when Marlow came outside. Marlow shouted and cursed at the mother because she had honked the horn to get the victim to come outside. Marlow pointed a gun at the car, and the mother immediately backed out of the driveway and drove away.

About a week later, while working into the early morning hours on several tax returns, the victim noticed that the numbers on the tax returns that Marlow had prepared had changed, which prompted her to ask him about the discrepancies. Enraged at being questioned, Marlow ordered the victim to leave his house. When the victim, who had her infant child in her lap, attempted to call her mother to come get her, Marlow snatched the phone from her hand and told her to walk. The victim tried to leave, but Marlow grabbed her and struck her in the head with his hand. Marlow pushed the victim into a chair and told her not to get up. He then berated the victim

2

for about 45 minutes, telling her she was bad mother. When he finished yelling at her, Marlow ordered the victim upstairs and into his bed. He told her not to think about calling the police because "he'd be out in two hours and he'd kill [her] and [her] family." Marlow followed the victim into the room and he placed his handgun on the night stand. Marlow got in bed with the victim and her child, and then, despite the victim's repeated protestations that she did not want to have sex with him, Marlow had forcible sexual intercourse with the victim. When he was finished, Marlow made the victim stay in bed with him until the next morning.

The following day, Marlow refused to let the victim leave; instead he made her clean his house and the pool. When Marlow finally let the victim leave, he reminded her that, if she called the police, "[he would] be out in two hours." After confiding in her mother, the victim called the police. At trial, a sexual assault nurse testified that her examination of the victim revealed evidence of recent vaginal injury consistent with a forcible sexual assault. No DNA evidence, however, was recovered. The police executed a search warrant at Marlow's residence, but they were unable to locate any guns.

The State also presented, pursuant to OCGA § 24-4-413, extrinsic evidence that Marlow had previously sexually assaulted another young woman who, like the

3

victim, had lived with Marlow briefly and had helped him with his income tax business. The woman testified that, when she asked Marlow for financial help, he responded by offering her money in exchange for sex. When she declined the offer, Marlow dragged her upstairs to his bedroom and raped her. She testified that she did not fight back against Marlow because she was afraid of him. He had a "scary" temper, he had been violent toward her in the past, and he kept weapons in the house, including a small handgun that he usually kept either in his pocket or a desk drawer.

1. Marlow contends that the trial court erred in charging the jury concerning the limited use of sexual assault extrinsic evidence admitted pursuant to OCGA § 24-4-413. Specifically, he contends the court erred in instructing the jury that such evidence could be used to "corroborate" the victim's testimony. He argues that the charge is not only erroneous, but that it constitutes an impermissible comment on the evidence.

(a) First, we note that, contrary to Marlow's assertion, the record does not support that this claim of error was preserved for appellate review with a contemporaneous objection; rather, it appears that counsel approved of the challenged

portion of the limiting instruction.[3] Where, as in this case, "no objection is made to a jury charge at trial, appellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions." (Citation and punctuation omitted.) *Van v. State*, 294 Ga. 464, 466 (2) (754 SE2d 355) (2014). The "plain error" test authorizes a reversal of a conviction only "if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the

---

[3] Before the extrinsic evidence witness testified about the prior sexual assault, the trial court charged the jury that her testimony was being offered as to Count 1 (rape) only, and for limited purposes, including the "corroboration of the testimony of the alleged victim." The record shows that, during the preceding charge conference, the trial court discussed with counsel the appropriate language for the limiting instruction. The purpose of the conference was to collectively craft and "critique" an instruction that would clarify for the jury how it might properly use the witness's testimony that Marlow had sexually assaulted her and that she had also seen guns in Marlow's possession. The court invited defense counsel's input on the limiting instruction, and counsel responded that, with respect to the use of extrinsic evidence of sexual assault, he was "coming up blank," and that he could find no example of an instruction limiting the scope of that evidence. The trial judge told the lawyers that he wanted to discuss further whether corroboration of the victim's testimony was a proper purpose for extrinsic evidence under either OCGA § 24-4-413 and 24-4-404 (b), saying: "You all need to tell me." He gave the prosecutor and defense counsel draft charges and recessed the proceedings so that counsel could review them, voice objections, and suggest changes. Thereafter, when the court asked defense counsel whether it was acceptable to add language to the limiting instruction allowing extrinsic evidence for the purpose of "corroboration of the alleged victim," defense counsel said the charge was "fine" and that "we can live with it[.]" Thus, the record shows that, not only did counsel fail to specifically object to the language he now challenges on appeal, he approved of it.

5

proceedings, and the error seriously affected the fairness, integrity or public reputation of judicial proceedings." (Citation and punctuation omitted.) Id. See also OCGA § 17-8-58 (b) (The failure to object precludes "appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.").

(b) In this case, there was no plain error because the instruction given was not erroneous. OCGA § 24-4-413 (a) provides that, "[i]n a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and *may be considered for its bearing on any matter to which it is relevant*." (emphasis supplied). Evidence is relevant if it logically tends to prove or to disprove a material fact at issue. *Owens v. State*, 248 Ga. 629, 630 (284 SE2d 408) (1981).

The credibility of a witness is always a material fact in issue at a criminal trial. See OCGA § 24-6-620 ("The credibility of a witness shall be a matter to be determined by the trier of fact, and if the case is being heard by a jury, the court shall give the jury proper instructions as to the credibility of a witness."). In this case, Marlow's defense was that the victim was not credible. He argued that she was an unreliable witness with a history of drug use, homelessness, and extreme dependence

6

– a "moocher." Counsel argued that the victim fabricated the allegations of rape so that she could avoid being indicted along with Marlow for tax fraud. He argued that the victim had no fear of Marlow or of his guns. He also argued that she lied about the rape so that Marlow would not be able to report her to the Department of Family and Children Services for being a bad mother and so that the victim's mother would feel sorry for her and would agree to support her.

The State's extrinsic evidence that Marlow had committed a similar sexual assault had the tendency to bolster the credibility of the victim by demonstrating that her circumstances were not unique. Indeed, it had the tendency to disprove a claim of fabrication by showing that Marlow preyed on women in the victim's desperate circumstances and intimidated them with guns and a violent temper. Thus, the evidence satisfied OCGA § 24-4-413's relevance threshold. As the Court of Appeals for the Tenth Circuit[4] observed, such evidence serves a legitimate purpose because it "has undeniable value in bolstering the credibility of the victim." *United States v. Enjady*, 134 F.3d 1427, 1433 (4) (II) (A) (10th Cir. 1998). In *Enjady*, the court

___

[4] See Ga. L. 2011, p. 99, § 1 (stating the legislative intent to adopt the Federal Rules of Evidence as interpreted by the United States Supreme Court and Circuit Courts of Appeals, as of January 1, 2013, with any conflicts among the circuit Courts of Appeals to be resolved by following the Eleventh Circuit Court).

recognized that extrinsic evidence of similar sexual assaults may be offered for the purpose of corroborating the victim's testimony when the defense argues that the victim consented. Id. ("[O]ne of Congress' expressed rationales for Rule 413 [] [is] the need for corroborating evidence when the alleged rapist claims consent, and there are no witnesses other than the defendant and the alleged victim."). Just as evidence corroborating a victim's testimony concerning rape would have a tendency to disprove a defense of consent, it would similarly serve to disprove a defense that the victim had a motive to fabricate allegations of rape. See *United States v. Brimm*, 608 Fed. Appx. 795, 800-801 (I) (D) (11th Cir. Fla. 2015) (Because the defense strategy was to discredit the victims, the extrinsic evidence testimony about the defendant's sexual beliefs and proclivities was an important component of the prosecutor's case because it corroborated the testimony of the victims.). Additionally, it was well settled under Georgia's prior "similar transaction" law that, in sexual abuse cases, similar transaction evidence may be used to corroborate the victim's testimony. *Frazier v. State*, 261 Ga. App. 508, 509 (2) (583 SE2d 188) (2003). For these reasons, the court's limiting instruction was not erroneous.

(c) In the alternative, Marlow argues that the limiting instruction was plain error because it constituted an impermissible comment on the evidence by the court,

in violation of former OCGA § 17-8-57.[5] The record does not bear this out. "The trial court's jury instruction did not assume certain things as fact and did not intimate to the jury what the trial court believed the evidence to be; therefore, the contested language does not constitute an impermissible judicial comment on the evidence." (Citation omitted) *Murphy v. State*, 270 Ga. 72, 75 (2) (e) (508 SE2d 399) (1998).

(d) Finally, though not specifically enumerated as error, Marlow also asserts that the portion of the court's limiting instruction concerning "other acts of alleged possession of a gun by the accused" was improper because it was "confusing" and was not authorized under OCGA § 24-4-404 (b). Marlow did not object to this instruction below[6] nor has he explained in his appellate brief how this portion of the limiting instruction constitutes reversible error. He has not demonstrated that merely

---

[5] Former OCGA § 17-8-57 provided:

It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

[6] See footnote 3, supra.

possessing a handgun is evidence of a crime, wrong, or bad act that should have been excluded under OCGA § 24-4-404 (b). See *Williams v. State*, 277 Ga. 853 (6) (a) (596 SE2d 597) (2004) (gun ownership alone does not impute bad character). In fact, the court specifically charged the jury that "you many not infer from such evidence that the accused is of a character that would commit [any of the crimes charged]." Moreover, given that the jury acquitted Marlow of aggravated assault by pointing a gun, Marlow has not shown that he was prejudiced as a result of this jury charge. Consequently, we find no error.

2. Marlow argues that the trial court erred by discouraging the jurors from taking notes and by informing them that they would have a written copy of the court's jury charges to use "for whatever purpose they may see fit." Marlow argues that doing so was an effort to "suppress the importance of the [verbal] jury charge in favor of concentrating on the relative weight of the State's case-in-chief" and constitutes plain error.

The record shows that the court verbally instructed the jury. The court also gave the jurors a written copy of the charges that it had previously read to them. The court never instructed the jury not to take notes during the trial. Rather, the court told the jury that it did not need to attempt to write down the court's charges because the

10

jury would be provided with a written copy. Marlow interposed no objection to the court's statements concerning the jury's use of the written charge nor did he object when the court gave the jury a written copy of the charge to consult during its deliberations. Because allowing the jury to have a written copy of the jury charge is authorized under Georgia law, the trial court was within its discretion to allow it. *Fletcher v. State*, 277 Ga. 795, 797 (4) (596 SE2d 132) (2004); *Anderson v. State*, 262 Ga. 26, 27-28 (3) (a) (413 SE2d 732) (1992). Marlow has not shown any error in this respect, much less any error that survives the failure to interpose a timely objection.

3. Marlow contends that the prosecutor made improper closing arguments concerning the State's burden of proof. He asserts that the prosecutor "advised [the jurors] that if they believe that there is simply 'not enough evidence' to convict in this case, that this is 'not reasonable doubt.'" We have reviewed the State's closing argument and have found no statement to this effect. "The burden is on the party alleging error to show it affirmatively by the record." (Punctuation and footnote omitted.) *Durrence v. State*, 307 Ga. App. 817, 821 (2) (706 SE2d 180) (2011). Marlow has not carried that burden. Moreover, Marlow has not demonstrated that he made a timely objection to any such improper argument, thereby preserving it for appellate review. Rather, he cites to a motion for a mistrial that he made after closing

11

argument concerning statements that defense counsel *thought* he heard the prosecutor say, statements that are not supported by the record. Under the circumstances, the motion for a mistrial was untimely and failed to preserve the alleged error for appellate review. See *Butler v. State*, 273 Ga. 380, 383-384 (8) (541 SE2d 653) (2001) (holding that the defendant's objection was untimely when he waited until the end of the prosecutor's closing argument to raise it); *Mullins v. Thompson*, 274 Ga. 366, 367 (2) (553 SE2d 154) (2001) ("[A] motion [for mistrial] must be made *at the time* the improper argument is uttered.") (emphasis in original).

*Judgment affirmed. Branch and Mercier, JJ., concur.*